## Heath & Milligan Mfg. Co. v. National Linseed Oil Co.

|  |  |
|---|---|
| 93 | 13 |
| s191s | 75 |
| 93 | 13 |
| r191s | 75 |
| 93 | 13 |
| s99 | 95 |

1. Construction of Contracts—*Meaning of the Word "Gallon."*—Where parties enter into a contract for the sale of linseed oil by the gallon at a certain price, and nothing is said as to how much is to constitute a gallon, the measure must be held to be a statutory gallon, unless by the mode of dealing by and between the parties, or by custom, the contract is to be construed as meaning a commercial gallon.

2. Words and Phrases—*The Term "Gallon" Construed.*—The word "gallon" in this State has a definite and fixed meaning; and when a court assumes, in construing a written contract for the sale of a commodity by the gallon, to limit, change or restrict the meaning of the word as fixed by statute, it must be upon a clear and necessary conclusion derived from unquestioned facts and circumstances. And if there is any reasonable doubt as to the meaning or intention of either of the parties, in using the word, to give to it a special or restricted meaning, the court must adopt the fixed legal signification.

3. Custom—*Frequent Settlements upon Certain Bases.*—Frequent settlements upon a certain basis can not be said to mature into a custom, or bind a party at the time ignorant that such basis was not legally correct.

4. Contracts — *Statutory Requirements—Weights and Measures.* — Contracts executed after the passage of the act relating to weights and measures, made within this State, for any work done, or for anything to be sold, delivered, done or agreed for, by weight or measure, are to be construed as made according to the standard weight and measure fixed by such law.

Assumpsit.—Common counts. Appeal from the Circuit Court of Cook County; the Hon. Elbridge Hanecy, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Reversed, and judgment entered in this court. Opinion filed January 15, 1901.

Statement by Mr. Justice Horton.—Appellant first commenced a suit against appellee. Afterward appellee commenced a suit against appellant. Both of said suits grew out of the delivery of oil upon the contracts hereinafter mentioned. The two suits were by stipulation consolidated, a jury waived and the cause submitted to the court for trial. There is no question upon the pleadings. Upon the trial the court found for the appellee and entered judgment against the appellant for $4,342.38. To reverse that judgment the case is brought to this court by appeal.

The case was heard upon an agreed state of facts which, so far as thought to be necessary to here recite, and except as stated in the opinion following, are as follows:

During the five years next preceding the commencement of the first of said suits appellant had purchased from appellee large quantities of linseed oil upon written contracts. All contracts were for oil at certain prices per gallon. Nothing was said as to how much constituted a gallon, or as to a "statutory" gallon. Deliveries were made and billed on a basis of seven and one-half pounds per gallon. The shortage in the weight would not ordinarily be discovered, but could be by weighing a measured gallon "on delicate and accurate laboratory balances or scales." Appellant did not make such test, but believed that it received a full gallon when it received seven and one-half pounds. It did not know to the contrary, until the fact was discovered by its chemist when conducting experiments November 5, 1896. At that time delivery upon the last two contracts had not been completed.

Appellant claimed that it was entitled to receive "statutory standard gallons of oil" weighing 7.761 pounds each, and that it was entitled to recover back over-payments made within five years. There were twenty-two contracts between the parties, the first dated February 24, 1892, and the last August 21, 1896, covering in the aggregate 1,110,000 gallons.

Appellant submitted to the court several propositions of law which the court refused to hold. The questions considered and determined by this court in the opinion following were presented in said refused propositions, but it is not necessary to state them in detail.

HOLLETT, TINSMAN & SAUTER, attorneys for appellant.

WILLIAM W. GURLEY and HORACE G. STONE, attorneys for appellee.

MR. JUSTICE HORTON delivered the opinion of the court.

Under the stipulation of facts in this case the only ques-

tion to be determined is whether, under the contracts between the parties, there should be delivered the statutory gallon of 7.761 pounds of linseed oil or the so-called commercial gallon of seven and one-half pounds. (Counsel have used the words " statutory gallon " and " commercial gallon," which we adopt for brevity and definiteness.

All of the contracts are for a given number of gallons. In none of them is there any provision as to the number of pounds in a gallon. Therefore the contracts must be held to be for statutory gallons, unless, by the mode of dealing by and between the parties, or by custom, the contracts are to be construed as meaning commercial gallons.

There have been twenty-two contracts between the parties for the delivery of oil by appellee to appellant, running over a period of more than five years. Bills for the oil delivered have been rendered upon the basis of seven and one-half pounds to the gallon. All such bills rendered prior to November 5, 1896, were paid by appellant. At that date appellant " discovered for the first time that a statutory gallon of linseed oil weighed 7.761 pounds." Said bills were paid by appellant " under the belief that a gallon of oil actually weighed but seven and one-half pounds." The same day that appellant discovered that a statutory gallon weighed 7.761 pounds it gave notice to appellee that the oil deliveries had been short in weight and asking an adjustment. Up to that time, as the stipulation says, "the appellant believed that a gallon of oil weighed only seven and one-half pounds." At the same time appellee knew that a gallon of oil weighed more than that at any temperature less than 250 degrees Fahrenheit. The stipulation is that the average temperature in this city during the period covered by the deliveries under said contracts, was 60 degrees Fahrenheit, and that at that temperature a gallon of linseed oil weighs 7.761 pounds.

Under the facts thus presented can it be said that the minds of the parties met, and that the contracts must be construed upon the theory that the parties thereto understood and agreed that seven and one-half pounds should be considered a gallon of oil ? We think not.

Neither can it be said that the minds of the parties met upon the understanding or agreement that 7.761 pounds should be considered a gallon. None of the oil delivered under said contracts was by measured gallons but was all by weight. As the parties did not agree that any specific number of pounds should constitute or be considered as being or comprising a gallon, it follows that the statutory must control.

In said stipulation of facts is the following, viz:

" At the time of the respective deliveries made by the National Linseed Oil Company to Heath & Milligan Manufacturing Company, under the contracts involved herein, it was the custom among oil manufacturers or crushers, of which the National Linseed Oil Company was one, to charge seven and one-half pounds as a gallon of linseed oil in deliveries made by them. The Heath & Milligan Manufacturing Company knew this custom and they also knew that in the various deliveries made under said contracts such deliveries were made on the basis of seven and one-half pounds to the gallon, but the Heath & Milligan Manufacturing Company did not know that a statutory gallon of oil weighed 7.761 pounds, but during all of said time up to November 1, 1896, the Heath & Milligan Manufacturing Company believed that a gallon of oil weighed only seven and one-half pounds."

It is contended by counsel for appellee that such custom must control. They do not contend that custom will override a statute. But their contention is that both parties understood, at the time they made their contracts, what the custom was, and that the word " gallon " is used with reference to, and as defined by such custom. In other words, that when the parties used the word " gallon " they did so with the understanding that it meant seven and one-half pounds. There is much force in this contention.

But the word " gallon " has in this State a definite and fixed meaning. When a court assumes, in construing a written contract, to limit, or change, or restrict the definite meaning of a word, as fixed by statute, it can only do so upon a clear and necessary conclusion derived from unquestioned facts and circumstances. If there be any reasonable

doubt as to the intention of either of the parties, in using such word, to give to it a special or restricted meaning, then the court must adopt the fixed legal signification.

Appellee knew that there was a difference between a statutory gallon and a gallon under the custom mentioned in the stipulation and knew what that difference was. It probably intended the use of the word " gallon " to be as fixed by such custom. Appellant did not know that there was any difference, and therefore could not have intended to waive, or limit, or restrict the meaning of the word gallon as fixed by statute.

Sec. 6, Ch. 147, Rev. Stat. of Ill., is as follows, viz.:

" Contracts hereafter to be executed, made within this State, for any work to be done, or for anything to be sold, delivered, done or agreed for, by weight or measure, shall be taken and construed to be made according to the standard weight and measure thus ascertained."

There is nothing in the stipulation of facts to show that appellant knowingly intended to waive its rights under that statute. True, the stipulation says that " it was the custom among oil manufacturers and crushers," of which the appellee was one, " to charge seven and one-half pounds as a gallon of linseed oil in deliveries made by them," and that appellee knew this custom and " also knew that in the various deliveries made under said contracts such deliveries were made on a basis of seven and one-half pounds to the gallon, but did not know that a statutory gallon of oil weighed 7.761 pounds." In other words, it is agreed that it was the custom of certain manufacturers, of which appellee was one, to charge for more gallons of oil than were delivered, and that appellant knew the basis upon which such charge was made, but did not know that by so doing appellee was profiting by short weight delivery.

Frequent settlements upon a certain basis can not be said to mature into a custom, or to bind a party at the time ignorant of the fact that such basis was not legally correct. (Osborne & Co. v. Rich, 53 Ill. App. 661, 665.) We are unable to discover any intention on the part of appellant

to waive any of its legal rights by restricting the statutory meaning of the word "gallon" as used in said contracts.

The questions presented in this record are not free from doubt or difficulty of solution, but the conclusion of the court is that the judgment of the Circuit Court must be reversed.

By their said stipulation, filed in the court below, the parties agreed as follows, to wit:

"If the court holds that under said contracts said Heath & Milligan Manufacturing Company was entitled to receive 7.761 pounds for a gallon of oil on all of said deliveries, it is agreed that the amount due said Heath & Milligan Manufacturing Company from the National Linseed Oil Company, after allowing all set-offs, is $12,012.43.

The judgment of the Circuit Court will be reversed but the cause will not be remanded, and judgment will be entered in this court in favor of appellant and against appellee for the sum of $12,012.43, with interest thereon from the 18th day of November, 1899 (that being the date when final judgment was entered in the trial court), and that the appellee pay the costs to be taxed.  Reversed.