## Heath & Milligan Mfg. Co. v. National Linseed Oil Co.

1. APPELLATE COURT PRACTICE—*Does Not Sit to Review Its Own Decisions—When Res Judicata.*—The Appellate Court can not sit to review its own decisions, except in case of a petition for a rehearing. It is only its final orders or judgments which are, as between the parties to the suit, *res judicata.*

2. MISTAKE OF FACTS—*Recovery of Money Paid by.*—Money paid under a mistake of facts may be recovered back in an action of assumpsit, but not when it has been voluntarily paid under a mistake of law, and without fraud or mistake of fact; and so, where money is voluntarily paid under a mistake as to the law, and under a claim of right, it can not be recovered back.

3. MISTAKE OF LAW—*Money Paid Under, Not Recoverable.*—It is the established rule in equity, as well as at law, that money paid under a mistake of law, with full knowledge of the facts, is not recoverable, and that even a promise to pay upon a supposed liability, and in ignorance of the law, will bind a party.

**Assumpsit,** on the common counts. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court on a remanding order from the Supreme Court, at the October term, 1901. Affirmed. Opinion filed December 24, 1901.

**Statement.**— This cause was submitted to the Circuit Court upon an agreed statement of facts. A jury having been waived, each of the parties brought suit against the other. Appellant sued to recover back alleged over-payments for linseed oil purchased of and delivered by appellee, and appellee sued in turn to recover from appellant a balance claimed to be due. By agreement the causes were consolidated.

The facts upon which the finding of the trial court was based are included in the stipulation, and may be stated substantially as follows: For more than five years prior to the commencement of the above entitled suit, the Heath & Milligan Manufacturing Company had from time to time purchased large quantities of linseed oil from the National Linseed Oil Company, under various written contracts. The contracts involved herein were made for linseed oil at certain prices per gallon; nothing was said in any of said contracts as to how much constituted a gallon, and nothing was said about "statutory" gallons. Deliveries were made in bulk. Bills were rendered to the Heath & Milligan Manufacturing Company charging it for said oil on a basis of seven and one-half pounds of oil per gallon.

The weight of linseed oil varies according to its temperature. A statutory standard gallon of linseed oil at

| | | | |
|---|---|---|---|
| 50 degrees Fahrenheit, weighs | 7.788 pounds. |
| 60 " " " | 7.761 " |
| 70 " " " | 7.755 " |
| 80 " " " | 7.730 " |
| 90 " · " " | 7.705 " |
| 250 " " " | 7.50 " |

It is agreed that the mean or average temperature of sixty degrees Fahrenheit shall be held to be the temperature at the time and place of the various deliveries involved herein.

At the time of the respective deliveries made by the National Linseed Oil Company to Heath & Milligan Manufacturing Company, under the contracts involved herein, it was the custom among oil manufacturers or crushers, of

which the National Linseed Oil Company was one, to charge seven and one-half pounds as a gallon of linseed oil in deliveries made by them. The Heath & Milligan Manufacturing Company knew this custom, and they also knew that in the various deliveries made under said contracts such deliveries were made on a basis of seven and one-half pounds to the gallon, but did not know that a statutory gallon of oil weighed 7.761 pounds. The exact weight of a gallon of linseed oil could have been ascertained by said Heath & Milligan Manufacturing Company at any time by weighing a gallon of such oil on delicate and accurate laboratory balances or scales. The shortage in weight would not ordinarily be discovered in weighing a single gallon measure on the ordinary commercial scales. The Heath & Milligan Manufacturing Company did not make such test, but believed that it was receiving a full gallon of such oil when it received and was charged with seven and one-half pounds as one gallon by the said National Linseed Oil Company. About November 5, 1896, the chemist employed by Heath & Milligan Manufacturing Company, while conducting experiments, discovered and informed said company that a statutory gallon of such oil actually weighed 7.761 pounds. The National Linseed Oil Company filled all of the contracts in question by delivering seven and one-half pounds as a gallon of oil, and said Heath & Milligan Manufacturing Company paid for the same (excepting a balance of $4,342.38, for which statements were rendered by the National Linseed Oil Company under contract dated August 31, 1896), believing that seven and one-half pounds did actually constitute one gallon of linseed oil.

During the five years prior to the commencement of this litigation twenty-two contracts in writing were entered into between the parties. The first of these was dated February 24, 1892, for 1,000 barrels or '50,000 gallons of linseed oil. The last is dated August 31, 1896, and ratified September 3, 1896, for "100,000 gallons of linseed oil." The deliveries under this last contract were to be made in quantities of 20,000 gallons a month for five months beginning January, 1897, and ending with May, 1897.

November 5, 1896, appellant wrote appellee as follows:

"NATIONAL LINSEED OIL COMPANY, Old Colony Bldg., City.

GENTLEMEN: We hereby notify you that the weight of linseed oil which has been delivered, and which is still being delivered on contracts made with you has been found to be 7.76 lbs. per gallon as against your charge of 7.50 lbs. per gallon. This information has already been communicated by us to you through your city representative, F. E. Pettet. On contracts which have been completed (on your basis of weight) as well as on contract under which deliveries are being made at present, there is a very considerable overcharge for which we are properly entitled to rebate. Please advise us promptly what you propose to do regarding an adjustment of the above overcharge; also, what your intentions are regarding deliveries yet to be made on contract under which deliveries are now being made, as well as under contract per your letter of September 3, 1896, for future deliveries. Pending your early reply, *we remit*, according to your weight, but without waiving any of our rights, our check payable," etc.

To this appellee replied as follows:

"Relative to overcharge on deliveries made you and which are being made you to-day on contracts with this company, we have delivered and are delivering you linseed oil on a basis at which we sold you the oil, 7½ pounds to the gallon. Manufacturers in this country always sell linseed oil on a basis of weight and not by measure, and prices are made on that basis of weight. The commercial gallon of linseed oil is 7½ pounds, which is now, and has been for half a century past, the commercial custom. Different temperatures affect the weight of a gallon of linseed oil and for this reason the commercial gallon of 7½ pounds was established. We hope the explanation will be satisfactory, and awaiting further favors, we remain."

The stipulation concludes as follows:

"If the court holds that under the contracts hereinbefore described the Heath & Milligan Manufacturing Company was entitled to receive but 7½ pounds for a gallon of oil on all said deliveries it is agreed that the amount due from said Heath & Milligan Manufacturing Company to the National Linseed Oil Company is $4,342.38.

If the court holds that under said contracts said Heath & Milligan Manufacturing Company was entitled to receive

7.761 pounds for a gallon of oil on all said deliveries, it is agreed that the amount due said Heath & Milligan Manufacturing Company from the National Linseed Oil Company, after allowing all set-offs, is $12,012.43.

If the court holds that the Heath & Milligan Manufacturing Company was entitled to receive 7.761 pounds for a gallon only upon such contracts as were being performed at the time it claimed shortage, it is agreed that the amount due said National Linseed Oil Company from said Heath & Milligan Manufacturing Company is $702.70."

Appellant submitted to the trial court several propositions of law which were refused. The questions therein presented are considered in the opinion of the court. The trial court held in accordance with the first of the three concluding paragraphs of the stipulation and entered judgment accordingly against appellant for $4,342.38. An appeal was taken to this court, which reversed the judgment (93 Ill. App. 13) and entered judgment *de novo* against appellee in accordance with the second of said concluding paragraphs of the stipulation for $12,012.43 with interest and costs. From that judgment appellee prosecuted its appeal to the Supreme Court, which reversed the judgment and remanded the cause with directions to this court " to recite the facts as found in its judgment of reversal, or if it reverses the case for errors of law to remand it to the Circuit Court for another trial." Linseed Oil Co. v. Heath & Milligan Manufacturing Co., 191 Ill. 75.

HOLLETT, TINSMAN & SAUTER, attorneys for appellant.

W. W. GURLEY and H. G. STONE, attorneys for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It is first contended by appellant's attorneys, that this court has now no option under the remanding order, except to make a finding of the ultimate facts, and upon such finding enter a new judgment in favor of appellant in accord with its former action, or else to reverse the judgment of the trial court and remand the cause for that court to enter such

judgment in accordance with the opinion heretofore rendered. (93 Ill. App. 13.)

It is apparent, we think, from that opinion, that this court did not find the material facts differently from the trial court; but rather that it then—erroneously as it now seems —regarded the agreed statement of facts made by the parties as settling such ultimate facts as were necessary to the determination of the cause; and that it reversed the judgment of the trial court for what were regarded as errors in the application of the law to the facts. That such was the ground of reversal is the presumption also of law where there is an omission to make a finding of facts by the Appellate Court. (Linseed Oil Co. v. Heath & Milligan Manufacturing Co., 191 Ill. 75, 77.) If this court had been correct in the view that the parties had agreed upon such ultimate facts as are material, the questions before the Appellate Court on appeal would have been only questions of law, and no recital of facts found in the judgment of this court would have been necessary upon appeal or writ of error to the Supreme Court from the order of reversal and entry of final judgment here. (Linseed Oil Co. v. Heath & Milligan Manufacturing Co., *supra*, p. 78.) The Supreme Court having now given its opinion to the effect that the said agreed statement of facts did not constitute "an agreement as to the ultimate or substantive facts upon which the determination of the case must depend," it is the duty of this court to do what it now appears should have been done before, viz., recite the facts as found, or remand the cause to the Circuit Court, if we are still of opinion that the judgment must be reversed for errors of law. Purcell Co. v. Sage, 189 Ill. 79–82.

It is true the Appellate Court can not sit to review its own decisions, except in case of a petition for rehearing. It is, however, only "final orders or judgments of the court," which "are as between the parties to the suit *res adjudicata*, and binding upon them whenever they again arise in that court between the same parties upon the same state of record." (Henning v. Eldridge, 146 Ill. 305–309.) In the

present case there is now no such final order or judgment of this court in force or effect. We are therefore at liberty, and it becomes our duty under the mandate of the Supreme Court, to consider whether the cause shall now be affirmed, or reversed, or reversed and remanded for another trial, as if it had never been here before. We have accordingly permitted the parties to file additional briefs and have given a hearing upon oral argument. The case has thus been more fully presented and our views upon the questions involved have been in some respects modified.

It is first contended by appellant's counsel that the money paid by it upon the contracts which have been fully performed by delivery of oil thereunder, and by payment of the contract price, was paid under a mistake of fact and can therefore be recovered back. It is no doubt true that money paid under a mistake of fact may be recovered back in an action of assumpsit. (Commercial Union Assurance Co. v. Scammon, 133 Ill. 627–632; Wolf v. Baird, 123 Ill. 585–590.) Not so, however, when the money has been voluntarily paid upon a mistake of law, and without fraud or mistake of fact. "It seems to be well settled, as between individuals, that where money is voluntarily paid under a mistake as to the law and under a claim of right, it can not be recovered back." (The People v. Foster, 133 Ill. 496–509, and cases there cited.) In Elston v. City of Chicago, 40 Ill. 514–518, it is said by Justice Breese: "No case can be found where money has been voluntarily paid with a full knowledge of the facts and circumstances under which it was demanded, which holds that it can be recovered back upon the ground that the payment was made under a misapprehension of the legal rights and obligations of the party paying." (See also Falls v. City of Chicago, 58 Ill. 403–407; Walser v. Board of Education, 160 Ill. 272–276; Fowler v. Black, 136 Ill. 363–378.) In Kerr on Fraud and Mistake it is said (p. 401): "It appears, from the authorities, to be established in equity as well as at law, that money paid under a mistake of law with full knowledge of the facts is not recoverable; and that even a promise to pay upon a sup-

posed liability and in ignorance of the law will bind the party." In Pekkins v. Eaton, 3 N. H. 152, it was held in the case of a wager, which was not a legally binding contract, that when the money has been paid over to the winner, no action lies to recover it back. In Nicholls v. Leeson, 3 Atkyns, 573, Lord Hardwicke held, where an annuity had been given by will and made a charge upon property left by the testator, and the annuity had been paid for any length of years without deduction for land tax, although subject to such tax, it will be presumed, in the absence of fraud, that the amount has been paid by mutual consent on both sides, and the payer can not recover back the overpayment.

Were the payments, made upon the first twenty of the contracts now in question upon which deliveries had been completed, and which were fully performed before appellant claimed the right to receive the statutory 7.761 pounds of oil for a gallon instead of 7.50 pounds, made upon a mistake of fact or a mistake as to the law? It is stipulated that these payments were made by appellant before it discovered that the statutory gallon weighed 7.761 pounds, and " under the belief that a gallon of oil actually weighed but 7.50 pounds."

This belief was merely ignorance of the law which specifies what the weight of a statutory gallon of oil shall be. It. is not claimed that appellant was deceived or fraudulently imposed upon. The stipulation of facts states that it was the custom among oil manufacturers, including appellee, "to charge 7.50 pounds as a gallon of linseed oil in deliveries made by them. The Heath & Milligan Manufacturing Company knew this custom, and they also knew that in the various deliveries made under said contracts such deliveries were made on a basis of 7.50 pounds to the gallon;" but they did "not know that a statutory gallon of oil weighed 7.761 pounds." It thus appears that appellant knew when it contracted for the oil under said contracts that it would receive only 7.50 pounds for a gallon, and made its contracts upon that basis; knew both when it agreed to pay and when it

paid the price per gallon as specified, that it was to pay and was paying that price for as many times ·7.50 pounds, as there were gallons called for by said contracts. It got what it paid for, and all it paid for. The only thing appellant did not know was that a statutory gallon weighed 7.761 pounds, and that under the letter of said contracts it would have been entitled to receive statutory gallons, instead of what, for distinction, we may call customary gallons, or, using the term employed by counsel, "commercial gallons." This was clearly ignorance of the statute and of legal rights under the statute; a mistake of law but not of fact. It follows that the money thus voluntarily paid by appellant upon such contracts so far as completed, was paid without fraud, and not only without mistake of fact, but with full knowledge of the facts. Such payments can not be recovered back. It is not a mere presumption in this case, but is an agreed fact that the amounts referred to were agreed upon as the price to be paid for the quantity of oil actually delivered and received by mutual consent. Having so consented and ratified its consent by payment therefor with full knowledge of the facts, appellant was not entitled at the time it brought suit to receive the difference between 7.50 and 7.761 pounds of oil for a gallon on said completed contracts and deliveries thereunder, and is not entitled to recover in accordance with the second of the concluding paragraphs of the stipulation quoted in the preceding statement.

Was the Heath & Milligan Manufacturing Company entitled to receive 7.761 pounds for a gallon upon the remaining two contracts which were only partially performed at the time it discovered that a statutory gallon contained that quantity of oil? It is stated that the last two of the said contracts between the parties were being performed at the time appellant claimed shortage. So far as such contracts had been carried out and payments made for oil delivered in pursuance thereof, what has been previously said is fully applicable. But by such acceptance of the deliveries made on said partially performed contracts and by payments there-

under upon the basis of 7½ pounds to a gallon, the parties had by mutual consent placed their own construction upon the meaning of the word "gallon" as in said contracts used. Thus they had settled the construction of the contracts in progress of execution by agreement among themselves, and are bound by their own agreement.    It is not a question of the legal meaning of the word "gallon."    As to that the statute is conclusive.    But the question is, what meaning did the parties themselves give it; what did they intend by it; and by their agreed statement of facts and by their construction as shown by their uniform course of conduct, they have construed it as meaning 7½ pounds of oil.    It was too late to change their interpretation so far as the partially performed contracts were concerned after they had entered on performance and had by their conduct ratified the meaning previously accepted, with reference to which said contracts were made.    That they were so made is shown by the stipulation of facts.    It is stated that appellant knew the custom of charging 7½ pounds of oil for a gallon.    The knowledge of this custom is evidence that the parties entered into their contract in contemplation of such usage.    Hutchins v. Webster, 165 Mass. 439–441; Corbett v. Underwood, 83 Ill. 324–327–328.    There is no reasonable doubt as to the intention on both sides that the word "gallon" as used in said contracts, should mean 7½ pounds, and such intention must control.    It follows that appellant received all it was entitled to receive under said contracts, and the judgment of the Circuit Court was therefore correct and must be affirmed.