THE REYNOLDS & REYNOLDS COMPANY ET AL. *v.* EACOCK, RECEIVER, ET AL.

[No. 3,781.   Filed October 23, 1901.]

LIENS.— *Corporations.— Insolvency.— Chattel Mortgages.*—Where a manufacturing company executed a chattel mortgage on its stock and machinery to a trustee for the benefit of certain creditors containing a provision that the mortgagor should continue to conduct the business and keep an account of all receipts and expenses, and after paying all expenses, apply the residue to the liquidation of the claims secured, claims for merchandise and for other expenses incurred in the operation of the plant, furnished by creditors in reliance upon the provision of the mortgage, are entitled to preferential payment from the proceeds of the mortgaged property.

From Tippecanoe Circuit Court; *W. C. L. Taylor,* Judge.

Intervening petition by the Reynolds & Reynolds Company and others asking for the allowance as preferred claims the claims of petitioners against George J. Eacock, receiver of the Spring-Emerson Stationery Company. From a judgment sustaining a demurrer to the petition, the petitioners appeal. *Reversed.*

*G. P. Haywood* and *C. A. Burnett,* for appellants.

*S. P. Baird, J. F. Hanly, W. R. Wood, A. W. Caldwell, J. L. Caldwell, A. L. Kumler* and *T. F. Gaylord,* for appellees.

HENLEY, J.—The only question involved in this appeal arises upon the action of the trial court in sustaining appellees' demurrer to the appellants' intervening petition.

It appears from the record in this case that a receiver had been appointed for the Spring-Emerson Stationery Company in an action for that purpose by the Office Specialty Manufacturing Company. The court had ordered in the proceedings of said receivership that all creditors whose claims had not been reduced to judgment to file their claims with the clerk of the court on or before a certain date, and the appellants herein had complied with this order of the court. In order to present the question of the priority of their claims before the trial court, appellants asked and obtained leave to file an intervening petition. The sufficiency of this petition was raised by appellees' demurrer thereto. It is averred in appellants' intervening petition that on the 17th day of September, 1896, the Spring-Emerson Stationery Company, for the purpose of securing certain of its creditors, executed to one Mortimer Levering, as trustee for said certain creditors, a chattel mortgage upon its stock of goods and machinery, which mortgage was duly filed and recorded in the office of the recorder of Tippecanoe county within ten days after its execution; that it was provided in said mortgage that the mortgagor should retain possession of the goods so mortgaged and that it should replenish the stock

of goods it had on hand when it became necessary to keep said stock in salable condition, and that it should keep an accurate account of all expenses incurred by it in conducting the business, including the purchase of whatever new stock or material it might be necessary to keep said stock of goods in fair condition; and after paying for such new goods that might be so purchased and the expenses of conducting said business, it should then apply the residue of the moneys by it received to the payment of the indebtedness secured by said mortgage; that said trustee accepted said trust and the said mortgagor continued to carry on its business under the terms of said mortgage until the 3rd day of December, 1896, when upon the application of the Office Specialty Manufacturing Company a receiver was appointed for said mortgagor; that George J. Eacock was appointed such receiver and has continued so to act until the filing of this petition; that on the 18th day of April, 1899, the court entered an order in said cause requiring all the creditors of said mortgagor whose claims had not been reduced to judgment to file their claims with the clerk of said court on or before the 8th day of May, 1899; that each of said appellants filed with the clerk his said claims; that each of said claims is for goods, wares, and merchandise sold and delivered to said mortgagor at its special instance and request between the 17th day of September, 1896, the date of the execution of the mortgage to said Levering, trustee, and the appointment of the receiver, except certain of said claims which were for electric power, gas, electricity, and fire insurance, which were also furnished between said dates above mentioned; that all of said goods, wares, and merchandise, electric power, gas, electricity, and insurance were furnished by the appellants with the knowledge, consent, and acquiescence of the mortgagee and under and pursuant to the terms of the mortgage, and were furnished for the purpose of replenishing the stock of goods which was on hands at the time said mortgage was executed, and were a part of the

expense of conducting said business, and were necessary in order to keep said stock in salable condition, and that the electric power, light, gas, and fire insurance were necessary in the conduct of said business during the time said business was so conducted between the date of the execution of the said mortgage and the appointment of the said receiver; that by the terms of said mortgage the mortgagor was required to keep the mortgaged property insured in the amount of $16,000 for the protection of said mortgaged property and said mortgagee; that prior to the time appellants furnished said goods, wares, and merchandise, insurance, gas, electricity, and power, they knew of the existence of said mortgage and its terms and conditions with reference to the purchasing of new goods and the furnishing of electricity and gas for light, fuel, and power, and they knew of the provision in regard to reinsurance, and that they furnished the goods, wares, and merchandise, light, fuel, power, and insurance on account of and because of the provisions of said mortgage in relation thereto, and relied upon the agreement as provided in said mortgage made by said mortgagor and mortgagee for the payment of such debts as are represented by the claims of appellants; that the goods, wares, and merchandise and other expenses represented by appellants' claims enhanced the value of the property and were for the betterment of the same; that some of said goods, wares, and merchandise so purchased were, together with the goods, wares, and merchandise on hand at the time of the execution of said mortgage, sold in the due course of business by said mortgagor during the time said business was conducted under said mortgage for the interest and benefit of said mortgagee, and that the balance of said goods, wares, and merchandise so purchased was afterwards sold by the receiver with the rest of the stock of goods mortgaged in favor of said mortgagee under an order of court, the proceeds of which sale constituted a part of the moneys in the hands of said receiver. It is further alleged in the intervening peti-

tion that the mortgagee claims a first and prior lien upon the funds in the hands of the receiver, and that because of the facts shown in their petition the lien of said mortgagee upon the funds in the hands of the receiver is subordinate to the liens of these appellants; that the funds in the hands of the receiver, after paying the expenses of such receivership, will be insufficient to pay said mortgaged indebtedness, and that there are no other funds to come into the hands of said receiver.   The prayer of the petition is that the court enter an order in said cause directing the receiver to pay out of any moneys in his hands the respective claims of appellants which were filed with the clerk on or before the 8th day of May, 1899, and that the court decree that each of said claims is a prior and paramount claim to the lien of the mortgage, and that the claims of appellants be paid in full before any payments are made in satisfaction of said mortgage.   The mortgage is set out as an exhibit to the intervening petition, and also an itemized statement of each of the claims of the intervening petitioners.   One of the provisions in the mortgage to the appellee Levering was as follows:   "Said party of the first part shall keep an accurate account of all sales made by it and of all moneys received from said printing, binding, or manufacturing business, and of all expenses by it incurred in conducting said business, including the purchase of whatever new stock or material that may be necessary to keep said stock of goods in fair condition.   And after paying for such new goods as may be so purchased, and all the expenses of said printing, manufacturing, and conducting said business, shall apply the residue of the moneys by it received to the liquidation of said above named indebtedness pro rata."

It is alleged in the intervening petition that all the goods, wares, and merchandise and other expenses which go to make up the claim of appellants were furnished between the date of the execution of said mortgage and the date of the appointment of the receiver; that they relied upon the agreement made in the mortgage between the mortgagor and mortgagee;

that the goods so furnished were necessary to keep the said stock in good condition, and the electricity, gas, etc., were necessary expenses of conducting the said business; that the goods so furnished were in part sold by the mortgagor and the moneys received therefor went into the hands of the mortgagor to be disposed of under the terms of the mortgage, the goods so furnished by appellants and remaining unsold at the time the receiver was appointed were sold by the receiver together with the other property of the company, and the money realized therefrom went into the fund now in the hands of the receiver, which the court has ordered paid to appellees, who are the beneficiaries under the mortgage.

Appellees' demurrer to the intervening petition admits all facts well pleaded therein. There are no questions of disputed amounts, overcharges, or fraudulent sales. There is no claim by any one that the mortgage did not cover after-acquired property. We think the petition in the case at bar exhibits claims such as a court of equity will decree preferential payment from the proceeds of the sale of the mortgaged property. The rule applied universally to such creditors of railroad companies is well stated by Waite, C. J., in *Fosdick* v. *Schall,* 99 U. S. 235, 25 L. Ed. 339: "Every railroad mortgagee in accepting his security impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the income." "The income out of which the mortgagee is to be paid is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipment and useful improvements. * * * While, ordinarily, this power is confined to the appropriation of the income of the receivership and the proceeds of moneyed assets that have been taken from the company, *cases may arise where equity will require the use of the proceeds of the sale of the mortgaged property in the same way.*" See, also, *Burnham* v. *Bowen,* 111 U. S. 776, 28 L. Ed. 596, 4

Sup. Ct. 675. The same rule was affirmed by the Supreme Court of this State in *Cambria Iron Co.* v. *Union Trust Co.,* 154 Ind. 291, and was by said court extended and made to apply to street railroads. We believe the reasoning of the learned judge who wrote the opinion in the last mentioned case would carry the operation of the rule far beyond merely institutions of a public character. But this rule is applied to railroads and street railways and made to protect a class of creditors such as are represented by appellants, without any provision being expressly made for them in the mortgage, upon the principle that such a rule is for the benefit of the public, the mortgagee and the general creditors, that whatever is essential in labor, repairs, or equipment to keep the institution a going concern must be protected. *Cambria Iron Co.* v. *Union Trust Co., supra.* In the case at bar every principle of equity, good faith, and fair dealing demands that the claims of appellants should be preferred. But it is not necessary to hold, nor do we hold, that the same rule would apply to appellants that would apply if the appellee Eacock's trust was a railway company. Appellants ground their case upon the agreement expressly made for their benefit in the mortgage. These appellants are the only creditors which by the agreement contained in the mortgage —an agreement made by the mortgagor and mortgagee— were to be paid; and it was further agreed that the residue of the money was to be applied to the liquidation of the debts held by appellees. This agreement was a part of the consideration for the giving of the mortgage. The payment of these claims of appellants does not place appellees in any worse condition than by their agreement they placed themselves. It will in nowise lessen the security contemplated in the mortgage. It is the simple enforcement of their own righteous contract. That a third party can take advantage of and enforce a contract made for his benefit has often been decided, and this rule applies not only in cases where the

debt of a third person is assumed as a part of the consideration of the agreement, but it also applies in cases where materialmen and mechanics may take advantage of the contractor's bond, although only named as a class in the bond. *Brown* v. *Markland,* 22 Ind. App. 652; *Williams* v. *Markland,* 15 Ind. App. 669; *American Surety Co.* v. *Lauber,* 22 Ind. App. 326; *Ayres* v. *Randall,* 108 Ind. 595.

Counsel for appellants have well said: "The funds in the hands of the receiver to the extent of the total amount of the claims of these appellants are to that amount larger than the mortgage creditors had any right to expect and to that amount larger than they have any right to receive."

The demurrer to the intervening petition ought to have been overruled. The judgment is reversed, with instruction to the trial court to overrule the demurrer to appellants' intervening petition, and for further proceedings in accordance with this opinion.