## THE HEATH & MILLIGAN MANUFACTURING COMPANY
## *v.*
## THE NATIONAL LINSEED OIL COMPANY.

*Opinion filed June 19, 1902—Rehearing denied October 8, 1901.*

1. APPEALS AND ERRORS—*right of Appellate Court to affirm under remanding order.*  Where the Supreme Court reverses a judgment of the Appellate Court as not in accordance with the statute, and remands the cause to the latter court with directions "to recite the facts as found, in its judgment of reversal, or, if it reverses the case for errors of law, to remand it to the circuit court for another trial," the Appellate Court has power, if it deems proper, to render a judgment of affirmance.

2. CONTRACTS—*effect where parties contract with reference to custom.*  If a manufacturer of paints contracts with a linseed oil company for a certain quantity of oil at 7.50 pounds to the gallon, according to the custom of the oil company, and such contract is executed and new contracts made and executed upon the same basis, the fact that the paint manufacturer discovers that a gallon of oil weighs more than 7.50 pounds at ordinary temperature does not entitle him to recover a rebate upon the contracts already executed nor upon the one under which deliveries were being made.

*Heath & Milligan Co.* v. *Nat. Linseed Oil Co.* 99 Ill. App. 90, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

HOLLETT, TINSMAN & SAUTER, for appellant.

W. W. GURLEY, and H. G. STONE, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

The appellant brought suit in the circuit court of Cook county against the appellee to recover certain over-payments which it claimed to have made appellee by reason of short weight in large quantities of linseed oil sold and delivered to it by appellee.  The appellee also brought suit in the same court against the appellant to recover a balance claimed to be due it for linseed oil

sold and delivered by it to the appellant. The cases being at issue, by stipulation the same were consolidated, a jury was waived, and the matters in controversy were submitted to the court for decision upon an agreed statement of facts. The court found the issues in favor of the appellee and rendered judgment in its favor for $4342.38. On appeal the Appellate Court for the First District (93 Ill. App. 13,) reversed the judgment of the circuit court, and by virtue of the third clause of the stipulation hereinafter set forth rendered judgment in that court *de novo* in favor of appellant for $12,012.43. An appeal was perfected to this court, where the judgment of the Appellate Court, by reason of the fact that said court had incorporated no finding of fact in its final judgment, (191 Ill. 75,) was reversed and the case remanded to that court, with directions "to recite the facts as found, in its judgment of reversal, or, if it reverses the case for errors of law, to remand it to the circuit court for another trial." Upon the filing of the mandate of this court in the Appellate Court the appellant moved that court to proceed in accordance with the directions contained in the mandate of this court, which motion was denied, and after a re-argument of the case a judgment was entered in the Appellate Court affirming the judgment of the circuit court, from which judgment an appeal has been prosecuted to this court.

Appellant submitted to the trial court eleven propositions to be held as the law applicable to the case, which were all refused.

It is contended by appellant that the Appellate Court, on the case being re-instated in that court, had no power to affirm the judgment of the circuit court. We do not agree with such contention. The judgment of the Appellate Court as theretofore entered was erroneous by reason of the fact that it was not in accordance with the statute and the decisions of this court, and for that reason the same was reversed and the case remanded to

that court, to the end that a valid judgment might be entered in that court.   By the action of this court in reversing said judgment and remanding the case to the Appellate Court the judgment of the Appellate Court was thereby set aside and annulled, and that court then had power to render a new judgment, the same as though said informal judgment had not been rendered, and might, if it deemed proper, affirm the judgment of the circuit court.   The mandate of this court only controlled the action of the Appellate Court in the event that it reversed the judgment of the circuit court, in which event the mandate directed in what manner it should proceed, it being left otherwise entirely free to proceed in such manner as in its judgment it might deem proper.   The judgment of this court in this case was in legal effect the same as the judgment in the case of *Supple* v. *Agnew*, 191 Ill. 439.   In that case the Appellate Court was expressly authorized to reverse and remand, or affirm, the judgment of the lower court, as in its judgment it should deem proper.   While in this case the Appellate Court was not in express terms authorized to affirm the judgment of the circuit court if in its judgment that disposition of the case was deemed proper, such direction was clearly implied in the judgment of this court, and the Appellate Court had power to affirm the judgment of the circuit court as fully as though such direction had been contained in the judgment of this court reversing the judgment and remanding the case to that court.

The principal question in this case is, did the appellant, under the contracts made with appellee, have the right to receive from appellee 7.50 or 7.761 pounds of linseed oil for each gallon of linseed oil delivered to it by the appellee?   The appellant was, and had been for many years prior to the commencement of this suit, engaged in the business of manufacturing and selling paints, and the appellee was, and had been for many years, engaged

in the business of manufacturing and selling linseed oil. The sales in question were made from time to time, extending over a period of more than five years, and the contracts, which were in writing, were for the sale and purchase of a certain number of *gallons* of linseed oil. Deliveries were made thereof, under all of said contracts, by the appellee in barrels and tanks, at the factory of the appellant. Bills were rendered to the appellant, charging it for the oil on the basis of 7.50 pounds of oil per gallon, which were paid without question by appellant up to about the first day of November, 1896, when appellant discovered that a statutory gallon of oil weighed 7.761 pounds, after which it declined to pay appellee for any further deliveries of oil upon the basis of 7.50 pounds of oil per gallon.

The stipulation sets forth that the weight of oil varies according to its temperature. The statutory standard gallon of linseed oil at fifty degrees Fahrenheit weighs 7.788 pounds; sixty degrees Fahrenheit weighs 7.761 pounds; seventy degrees Fahrenheit weighs 7.755 pounds; eighty degrees Fahrenheit weighs 7.730 pounds; ninety degrees Fahrenheit weighs 7.705 pounds; two hundred and fifty degrees Fahrenheit weighs 7.50 pounds. The mean or average temperature in the city of Chicago, where the contracts were executed and the deliveries made, during the period covered by the deliveries under the various contracts involved herein, was sixty degrees Fahrenheit. At the time of the respective deliveries made by the appellee it was the custom among oil manufacturers to charge 7.50 pounds as a gallon of linseed oil in deliveries made by them. Appellant knew this custom, and it also knew that in the various deliveries made to it by appellee such deliveries were made on the basis of 7.50 pounds to the gallon. Prior to the commencement of this litigation twenty-two contracts were entered into between the parties for the sale and purchase of linseed oil, twenty of which had been filled and the oil paid for.

The first of these was dated February 24, 1892, for 50,000 gallons of linseed oil. The last is dated August 31, 1896, for 100,000 gallons of linseed oil. The deliveries under this last contract were to be made in quantities of 20,000 gallons a month for five months, beginning January, 1897, and ending with May, 1897. On or about November 1, 1896, a chemist employed by the appellant, while conducting experiments, discovered and informed the appellant that a statutory gallon of linseed oil weighed 7.761 pounds. On November 5 the appellant demanded · of the appellee a re-payment of the difference in value between the oil received and paid for at 7.50 pounds per gallon and 7.761 pounds per gallon, and also that in completing the last two contracts of sale appellee furnish the last named weight for each gallon contracted for.

The three concluding paragraphs of the stipulation are as follows:

"If the court holds that under the contracts hereinbefore described the Heath & Milligan Manufacturing Company was entitled to receive but 7.50 pounds for a gallon of oil on all said deliveries, it is agreed that the amount due from said Heath & Milligan Manufacturing Company to the National Linseed Oil Company is $4342.38.

"If the court holds that under said contracts said Heath & Milligan Manufacturing Company was entitled to receive 7.761 pounds for a gallon of oil on all of said deliveries, it is agreed the amount due said Heath & Milligan Manufacturing Company from the National Linseed Oil Company, after allowing all set-offs, is $12,012.43.

"If the court holds that the Heath & Milligan Manufacturing Company was entitled to receive 7.761 pounds for a gallon only upon such contracts as were being performed at the time it claimed shortage, it is agreed the amount due said National Linseed Oil Company from said Heath & Milligan Manufacturing Company is $702.70."

It clearly appears that at the time the contracts in question were executed and the deliveries of oil there-

under made, the parties each understood that it was the custom among oil manufacturers to deliver 7.50 pounds of linseed oil as a gallon. If, therefore, the contracts were entered into with the understanding that a gallon of oil weighed 7.50 pounds, the price to be paid per gallon therefor must have been fixed by the parties upon the basis that a gallon of oil weighed that amount, and no more. If the appellant contracted for a gallon of oil weighing 7.50 pounds, there is no legal basis upon which it can now claim it is entitled to a gallon weighing 7.761 pounds. It seems to be conceded, as we think it must be, if the contracts had specified a gallon weighing 7.50 pounds, appellant would be bound to receive and pay for a gallon weighing that amount. Appellant knew appellee was a manufacturer of linseed oil and that such manufacturers sold only 7.50 pounds per gallon. While possessed of such knowledge it purchased the oil in question. Afterwards deliveries were made to it of 7.50 pounds per gallon, which for a period of five years it accepted and paid for without question. While it did not know during that time that a statutory gallon weighed 7.761 pounds, it did know that the gallon that manufacturers sold weighed 7.50 pounds, and no more. We think it clear, therefore, it purchased a gallon of 7.50 pounds, and not a gallon of 7.761 pounds.

We see no difference between the contracts which were fully executed and the two upon which deliveries were being made or were to be made subsequent to the time when the weight of a statutory gallon became known to appellant. In principle they are the same. If the purchase was made with a knowledge that a delivery was to be made of 7.50 pounds to the gallon, the fact that a statutory gallon weighs more or less than that amount is wholly immaterial. Appellant knew the appellee and other manufacturers of linseed oil were selling 7.50 pounds of oil as a gallon. With that knowledge it purchased oil by the gallon from appellee, and it must

accept a gallon weighing that amount although it did not then know that a statutory gallon of linseed oil weighed more than the gallon sold by manufacturers. The appellant knew the custom among manufacturers of linseed oil of charging 7.50 pounds for a gallon, and the trial court properly found that the parties entered into said contracts in view of such custom.

The judgment of the Appellate Court will therefore be affirmed.        *Judgment affirmed.*