NORUM, RESPONDENT, *v.* OHIO OIL CO. ET AL., APPELLANTS.

(No. 6,324.)

(Submitted June 1, 1928. Decided June 28, 1928. Resubmitted October 2, 1928. Decided December 4, 1928.)

[272 Pac. 534.]

*Mr. Hal. W. Stewart, Mr. Donald Campbell, Mr. Warren Toole* and *Mr. Homer G. Murphy,* for Appellants, submitted a brief; *Mr. Stewart* and *Mr. Campbell* argued the cause orally.

*Mr. Louis P. Donovan,* for Respondent, submitted a brief and, jointly with *Messrs. Belden & DeKalb* and *Mr. Merle C. Groene,* of Counsel, a supplemental brief; *Mr. Donovan* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

In this action the plaintiff seeks to recover from the defendants the sum of $539.20, royalty on oil produced from his land, alleged to have been by them wrongfully withheld from him. In his complaint the plaintiff alleges, in substance, that he was and is the owner of certain lands in Toole county, which on May 28, 1920, he leased for a period of twenty years to one Gordon Campbell for the exploration and development of oil and gas, which lease was thereafter

assigned and transferred to the defendant, the Sunburst Oil & Refining Company; that subsequently, on May 19, 1924, the latter company entered into an operating agreement with the defendant Ohio Oil Company for the development and operation of a portion of the leased premises under the terms of the lease; that the Ohio Oil Company entered into the possession of the land, and on or about November 1, 1924, completed a well thereon, which has ever since been producing oil in commercial quantities; that immediately after the last-mentioned date the plaintiff notified the defendants that he desired payment of the royalty due him under the terms of the lease, delivered to his credit, or order, in pipe-lines with which the wells on the land were connected; that defendants failed and neglected so to do, withholding two per cent of the production, because of plaintiff's alleged liability to pay a license tax to that extent for engaging in and carrying on the business of producing petroleum within the state of Montana, pursuant to the provisions of sections 2397 to 2408 of the Revised Codes of Montana of 1921, as amended by Chapter 67 of the Laws of the Eighteenth Legislative Assembly.

Demurrers to the complaint having been overruled, the defendants answered separately, each alleging affirmatively the lawful right to retain two per cent of the royalty due under the terms of the lease on account of the plaintiff's proportion of the license tax due the state of Montana under the law, and alleging an estoppel because of statements rendered to the plaintiff and settlements made with him without objection or protest, constituting an account stated. Replies were filed to the answers, and upon issues so joined the parties submitted the case to the court for decision upon an agreed statement of facts supplemented by the testimony of witnesses. After submission of the controversy, the court made findings of facts and conclusions of law in the plaintiff's favor, and judgment was entered in accordance therewith for

the full amount by plaintiff alleged to be due, from which this appeal was prosecuted.

There is no conflict as to the facts, and sufficient thereof appear from the synopsis of the complaint above set forth.

Defendants' several assignments of error present two questions determinative of the controversy, viz.: (1) Were the defendants warranted in charging the plaintiff with his proportion of the gross production license tax imposed by the law upon persons engaged in producing oil within the state? And (2) did the statements rendered the plaintiff, with accompanying check for royalty, accepted by him, constitute an account stated, so as to prevent him from recovery in this action? These questions will be by us separately discussed, considered and determined.

1. As to the plaintiff's liability to pay his portion of the tax imposed, we are required to construe and apply the language employed by the statute. It is by the Act provided that:

"Every person engaging in or carrying on the business of producing, within this state, petroleum, or other mineral or crude oil, or engaging in or carrying on the business of owning, controlling, managing, leasing or operating within this state any well or wells from which any merchantable or marketable petroleum or other mineral or crude oil is extracted or produced, sufficient in quantity to justify the marketing of the same, must, for the year 1923, and each year thereafter, when engaged in or carrying on any such business in this state, pay to the state treasurer, for the exclusive use and benefit of the state of Montana, a license tax for engaging in and carrying on such business in an amount equal to two per centum of the total gross value of all petroleum and other mineral or crude oil produced by such person within this state during such year." (Sec. 2398, Rev. Codes 1921, as amended by Chapter 67, Laws of 1923.)

It is the contention of the defendants that, while the tax imposed by the Act is a license tax, it applies to the land

owner, royalty holder or lessor equally with the producer or lessee, to the extent of his interest; that the land owner, royalty holder or lessor is engaged in the business of owning and leasing wells, and therefore comes within the provisions of the Act. The language employed appears clear, free from ambiguity and is easy of interpretation. It imposes an occupation license tax, as distinguished from a property tax (*Mid-Northern Oil Co.* v. *Walker*, 65 Mont. 414, 211 Pac. 353), and applies only to persons *engaged* in the *business* of producing oil. The owner of the land, as such, is not engaged in the *business* within the purview of the Act. He merely grants a right to the operator to engage in such *business* upon his land. Under the lease, the well is drilled and the oil produced therefrom by the operator, not by the land owner, and the well is subject to the exclusive control of the lessee so long as he performs all of the conditions of the lease.

The word "leasing," as used in the statute has reference to persons who engage in the business of obtaining such leases, rather than to the owner of the land who leases it. Clearly, it has application alone to those who operate wells on the land from which the oil is produced in paying quantities, as distinguished from the owner of the land. The correctness of this conclusion is further demonstrated by provision in the Act, in the same section, as to the method of determining the tax. It is provided that "in determining the amount of such tax there shall be excluded from consideration all petroleum, or other crude or mineral oil produced and used by such person during such year in connection with *his operations* in prospecting for, developing and producing such petroleum, crude or mineral oil."

It will be noted that the tax is expressly imposed upon the person engaged in the business of *producing* the oil, and thus it is made plain that it applies only to the operator. The exclusion from consideration of oil used in connection with *operation* in computing the amount of the tax, can have reference only to the operator. However, all possible

question is completely removed by further provision contained in the same section: "That in the doing of any such work, or in the drilling of any oil well, or in such prospecting, exploring or development work, any merchantable or marketable petroleum or other mineral or crude oil in excess of the quantity required by such person *for carrying on such operation* shall be produced sufficient in quantity to justify the marketing of the same, *then such work, drilling, prospecting, exploring or development work shall be deemed to be the engaging in and carrying on of such business within this state within the meaning of this section."*

The character of the occupation to which the tax applies is, in our opinion, clear and explicit. It applies to the operator, and not to the owner of the lands leased, from which the operator produces the oil from wells drilled thereon. Texas has a like enactment, which has been given similar interpretation by the supreme court of the United States. (*Oklahoma* v. *State of Texas*, 266 U. S. 298, 69 L. Ed. 296, 45 Sup. Ct. Rep. 101.) In that case it is held that, as between owners and lessees, the production tax is chargeable to the latter, since the tax is laid upon those who engage in the business of producing oil. The legislature has seen fit to exact the tax from the operator, producing oil from the lands, rather than the owner .of the land, as such owner, although the owner is benefited by the production. This was entirely within its province. In the imposition of a license tax, the lawmakers are not required to tax all occupations equally or uniformly under sections 1 and 2 of Article XII of our Constitution; they may tax all, or select for taxation certain classes, and leave others untaxed (*Hale* v. *County Treasurer of Mineral County*, 82 Mont. 98, 265 Pac. 6). And in the Act under consideration the legislature has seen fit to impose the tax solely upon the operator. Cases cited and relied upon by plaintiff's learned counsel, involving net proceeds taxes and ad valorem taxes, have no application in

determining the proper interpretation and application of the Act under consideration.

2. Under the terms of the oil and gas lease it was the duty of the defendants to deliver to the plaintiff's credit "free of cost in the pipe-lines to which they [the defendants] may connect their wells, or in tanks at the wells, the equal of 12½ per cent of all of the oil produced and saved" from the premises, "or will pay in cash the equal of 12½ per cent of the market value" of the oil, method of payment to be "optional" with the plaintiff. Notwithstanding such provision in the contract, it is agreed that during all of the time subsequent to the completion of the first well upon the land, and prior to the first day of December, 1925, the defendant Ohio Oil Company made full and correct monthly statements, which disclosed upon their face the total amount of oil produced from the land each month and the amount to which the plaintiff was entitled under the terms of the lease, all of which were regularly transmitted and received by the plaintiff, payments being made each and every month to the plaintiff, in manner and form as demanded by him, which were accepted and received without objection, protest or complaint, and with plaintiff's knowledge at the time that two per cent of the amount of the total royalty agreed to be paid was deducted for the purpose of defraying and liquidating the plaintiff's proportionate share of the oil producer's license imposed by law; in fact, after he had made assertion of his legal rights.

The district court held that the defendants never made any settlement with the plaintiff, precluding his right of recovery in this action, and entered judgment surcharging the accounts rendered with the deductions made because of the tax as by the plaintiff demanded. In our opinion, the court was in error, and the judgment cannot be upheld.

An account stated is defined by Bouvier as "an agreed balance of accounts; an account which has been examined and accepted by the parties." And this definition

is generally accepted as correct. (1 Cal. Jur., p. 189.) Entirely consistent with it, this court has heretofore defined an account stated as "a new contract arising out of an account existing between the parties—an agreement that the items of the account and the balance struck are correct, with an agreement, express or implied, for the payment of such balance. The consideration for the new contract is the original account (*Martin* v. *Heinze,* 31 Mont. 68, 77 Pac. 427), or, speaking with greater exactness, the consideration is the settlement of the original account (*Johnson* v. *Gallatin Valley Milling Co.,* 38 Mont. 83, 98 Pac. 883)." (*Petroleum Co.* v. *Campbell-Kevin Syndicate,* 75 Mont. 261, 242 Pac. 540.) It is an agreement between the parties, either express or implied, that all the items are correct. (*Voight* v. *Brooks,* 19 Mont. 374, 48 Pac. 549; *Martin* v. *Heinze,* supra; *Johnson* v. *Gallatin Valley Milling Co.,* supra; *O'Hanlon Co.* v. *Jess,* 58 Mont. 415, 14 A. L. R. 237, 193 Pac. 65.) It constitutes a new contract, either express or implied, for which the original contract, or the performance thereof, furnishes the consideration; it thereupon becomes in itself an agreement, conclusive on both parties, and supersedes the original contract. (1 Cal. Jur., p. 203.) Being an agreed balance of accounts, examined and accepted by the parties, either expressly or by conduct, it implies an admission of the correctness of the accounts. "The meeting of the minds of the parties upon the correctness of an account stated is usually the result of a statement of account by one party and an acquiescence therein by the other. The form of the acquiescence or assent is, however, immaterial, and may be implied from the conduct of the parties and the circumstances of the case." (1 C. J., p. 687.)

Where, at the time of stating an account and making settlement, the adverse party knew of the error, or should have known thereof, having had ample means of knowledge before him, such an account will not be reopened, in the absence of proof of fraud or mistake. (*Johnson* v.

*Gallatin Valley Milling Co.,* supra.) In the case of *O'Hanlon Co.* v. *Jess,* supra, this court said correctly: "It is quite generally held that, where parties have been engaged in a course of dealings, and there is an antecedent indebtedness in favor of one as against the other, and an account or bill purporting to be a statement of the account is rendered by the creditor to the debtor, who retains the same for an unreasonable length of time without objection, this is evidence of his assent to the correctness of the account, and, accordingly, is an account stated." "No practice could be more dangerous than that of opening accounts which the parties themselves have adjusted, on suggestion supported by doubtful or by only probable testimony." (*Chappedelaine* v. *Dechenaux,* 4 Cranch (U. S.), 306, 2 L. Ed. 629; *Johnson* v. *Gallatin Valley Milling Co.,* supra.)

Applying such basic principles of law to the admitted facts, it is clear, as a matter of law, that the plaintiff is debarred of right of recovery. Under the law he was not required to pay the tax, and the defendants had no right to charge him with any part thereof, and by the express terms of his contract, with the terms of which he was familiar he was entitled to all of his royalty oil or payment of the market value thereof *"free of cost"* to him. He was chargeable with notice of his legal rights under the law and the express terms of the contract. However, the plaintiff regularly received the monthly statements rendered by the defendants, and accepted and received settlements made in accordance therewith without objection during a course of dealing of more than two years, with full knowledge that deductions were regularly made of two per cent of the total royalty agreed to be paid in liquidation of his alleged proportion of the tax. It must be held that this constituted an implied account stated by acquiescence, and the plaintiff may not now recover the deductions so made from the royalty to which he was rightfully entitled under the law and the terms of the contract.

While, in our opinion, the monthly accounts so settled

are final and conclusive, yet as to subsequent settlements, made or to be made, the plaintiff is not estopped by his previous course of conduct from insisting upon payment of the royalty due him without such deduction. The law and his contract are controlling as to his rights, except as to past settlements, settlements made and accepted upon implied agreement to such deductions.

Plaintiff's learned counsel argues that the doctrine of accord and satisfaction is applicable, rather than account stated; but, whether the transactions noted be treated as an account stated or an accord and satisfaction, the result is the same. An accord is an agreement whereby something different is accepted in extinction of the obligation, something different or less than a person is legally entitled to. (Sec. 7556, Rev. Codes 1921; *State ex rel. Bishop* v. *Keating*, 56 Mont. 526, 185 Pac. 706.)

For the reasons stated, the judgment is reversed and the cause remanded to the district court of Toole county, with direction to enter judgment against the plaintiff.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.

---

(Submitted October 2, 1928. Decided December 4, 1928.)

ON REHEARING.

MR. JUSTICE GALEN delivered the opinion of the court.

After motion for rehearing had been made and filed in this case, Messrs. Belden & DeKalb appeared and asked leave to file a brief in support of the motion as *amici curiae,* which was accorded them. They presented and argued the question of whether the doctrine of account stated is properly applicable to a mistake of law in interpreting the provisions of a

contract in writing, by which the rights of the parties are established. In consequence whereof, a rehearing was granted, and the appeal was re-argued by all counsel, solely as to the correctness of our original views expressed as above set forth on the second phase of the decision on appeal, namely, the application of the doctrine of an account stated.

After carefully considering all arguments on rehearing, both oral and written, and the authorities cited by counsel, we are constrained to adhere to our opinion on the subject as originally expressed. This case, like all others, must be finally decided upon its own peculiar facts, which, in our opinion, clearly distinguish it from the numerous authorities cited and relied upon by learned *amici curiae*.

Here we have an oil lease, by virtue of which the operator is by the owner given the right to enter upon and occupy the land in the exploration and development of oil, and to market the oil produced therefrom; the lessor reserving to himself a stipulated royalty which the operator agrees to yield or pay. Monthly statements have been made and rendered by the operator to the lessor, all showing a deduction of two per cent on account of the state tax, and settlements were made with him by the operator each and every month for two and a half years in accordance with such statements of account, without objection or complaint, although it appears that he knew of such deduction and the reason therefor, and at the commencement of oil production from the land, as well as subsequently, asserted to the defendant Sunburst Oil & Refining Company his right to the royalty oil or its market value without the deduction of two per cent or any other amount, on account of the state occupation tax, or otherwise. Furthermore, he appears to have been advised by a representative of the latter company that he would not be paid the amount of such deductions made to cover the tax unless the supreme court so held. Notwithstanding, upon the basis of such statements, he accepted the settlements thereby shown, without objection or protest. There is

no suggestion of fraud in the making or rendition of the monthly statements, or in the settlements made in accordance therewith, or, in fact, as to any of the dealings between the parties. Each statement rendered and settlement made, in accordance therewith, constituted a complete adjustment between the parties for the month preceding, unless the contentions of the *amici curiae* were to be upheld.

It is argued earnestly that, since the rights of the parties are fixed by contract, there was a mistake of law in the settlements made with the plaintiff, and the accounts rendered upon which the settlements were made do not constitute accounts stated, sufficient to prevent the plaintiff from surcharging the accounts by this action.

In approaching decision of the question presented, it will be noted from the facts that this case does not present a mutual mistake of all of the parties by reason of a misapprehension of the law, all supposing they knew and understood it, and all making substantially the same mistake, constituting a mistake in law (sec. 7486, Rev. Codes, 1921; *Brundy* v. *Canby*, 50 Mont. 454, 148 Pac. 315) affecting their consent, but rather a mistake of law made by one party to the contract, without objection or protest by the party to be benefited and with his full knowledge and silent acquiescence. *Johnson* v. *Gallatin Valley Milling Co.*, 38 Mont. 83, 16 Ann. Cas. 974, 98 Pac. 883, is a case somewhat analogous. There it appears that the plaintiff, by written contract, sold grain to the defendant and accepted payment in installments therefor, according to the contract, on the basis of the defendant's scale weights. Later the plaintiff, believing that he had been short-weighted by the defendant, sought to surcharge the defendant, and sued to recover the difference between the value of the grain according to the weights shown by the defendant's statements and the correct weight thereof. This court, speaking through the late Chief Justice Brantly, held the doctrine of account stated applicable, and in connection therewith said: "In *Chappedelaine* v. *Dechenaux,* supra

[4 Cranch, 306, 2 L. Ed. 629], it was said: 'No practice could be more dangerous than that of opening accounts which the parties themselves have adjusted, on suggestion supported by doubtful or by only probable testimony.' In *Klauber* v. *Wright*, 52 Wis. 303, 8 N. W. 893, the court, after stating that the evidence to surcharge an account should be clear and satisfactory, quoted with approval from the earlier case of *Martin* v. *Beckwith*, 4 Wis. 220, as follows: 'Principle and public policy alike require that, when parties, after a full and fair opportunity of examining and deciding upon their mutual accounts, have adjusted and settled them, the settlement should be conclusive. Any other rule would be dangerous and oppressive, and often work the greatest injustice.' In *Linville* v. *State*, 130 Ind. 210, 29 N. E. 1129, it was said: 'The law favors the settlement of business transactions by the parties, and when they have made such settlements they will be held bound thereby, in the absence of fraud, mistake or other illegality. A voluntary settlement of accounts between parties affords a presumption that all items properly chargeable at the time were included. The presumption is not conclusive, but clear and convincing proof that such items were unintentionally omitted is necessary to sustain a subsequent claim to recover them.' Indeed, the rule has application to all contracts. The party who claims that he should not be bound by his engagements may not avoid them, except upon appropriate allegations setting forth the facts showing the fraud or mistake upon which he relies, and supporting his allegations by evidence sufficiently substantial and definite to overcome the prima facie case made against him by the admission that he made the engagements. (*Power & Bro.* v. *Turner*, 37 Mont. 521, 97 Pac. 950.) If, at the time of stating the account and making the settlement, the adverse party knew of the error, mistake, or fraud upon which he relies, or, with ample means of knowledge at hand, he failed to take advantage of such means of knowledge, there is still less reason that the account should be reopened, and it will not

be permitted except upon proof of fraud or imposition. (1 Cyc. 464; *Gage* v. *Parmelee,* 87 Ill. 329; *Farnam* v. *Brooks,* 9 Pick. (Mass.) 212; *Swayze* v. *Swayze,* 37 N. J. Eq. 180.)''

The doctrine is settled that, in general, a mistake of law, pure and simple, is not adequate ground for relief. Where a party, with knowledge of all the material facts, and without any other special circumstances giving rise to an equity in his behalf, enters into a transaction affecting his interests, rights, and liabilities, under a misapprehension of the law, courts will not relieve him from the consequence of his own mistake. And more especially should a party be denied relief from alleged mistake of law, where, as here, the party relying on a mistake of law, not only knew of his legal rights, but asserted them, before accepting monthly settlements on a disputed basis. (Pomeroy's Equity Jurisprudence, 4th ed., sec. 842; *Johnson* v. *Gallatin Valley Milling Co.,* supra.)

The case of *Bank of United States* v. *Daniel,* 12 Pet. (U. S.) 32, 9 L. Ed. 989, illustrates the principle. There a bill in equity was filed to recover money paid as damages for the nonpayment of a bill of exchange, as provided by a statute of Kentucky, which had not at the date of payment received judicial interpretation. Subsequently, in other cases, it was held that, the bill being payable without the state of Kentucky, the statute did not apply. Respecting the settlement made, the court said: ''The main question on which relief was sought by the bill, that on which the decree below proceeded, and on which the appellees relied in this court for its affirmance, is: Can a court of chancery relieve against a mistake of law? * * * Vexed as the question formerly was, and delicate as it now is, from the confusion in which numerous and conflicting decisions have involved it, no discussion of cases can be gone into without hazarding the introduction of exceptions that will be likely to sap the direct principle we intend to apply; indeed, the remedial power claimed by courts of chancery to relieve against mistakes of law, is a

doctrine rather grounded upon exceptions than upon established rules. To this course of adjudication we are unwilling to yield. That mere mistakes of law are not remediable, is well established, as was declared by this court in *Hunt* v. *Rousmaniere*, 1 Peters, 15 [7 L. Ed. 27], and we can only repeat, what was there said, 'that whatever exceptions there may be to the rule, they will be found few in number, and to have something peculiar in their character,' and to involve other elements of decision. (1 Storey's Ch. 129.) * * * Testing the case by the principle 'that a mistake or ignorance of the law forms no ground of relief from contracts fairly entered into with a full knowledge of the facts,' and under circumstances repelling all presumptions of fraud, imposition, or undue advantage having been taken of the party, none of which are chargeable upon the appellants in this case, the question then is, were the complainants entitled to relief? To which we respond decidedly in the negative.''

The case of *Heath & Milligan Mfg. Co.* v. *National Linseed Oil Co.*, 197 Ill. 632, 64 N. E. 732, is quite similar to the case before us. There it appears that Heath & Milligan had for a period of over five years been purchasing linseed oil from the National Linseed Oil Company, under the terms of written contracts. Deliveries were made and bills were rendered to the purchaser, charging it for the oil on the basis of 7.50 pounds of oil per gallon, which were paid without question, until it was discovered by the purchaser that a statutory gallon of oil weighed 7.761 pounds, after which it declined to pay for any further deliveries upon the basis of 7.50 pounds of oil per gallon. At the time of the deliveries of oil made under the contracts it was the custom among oil manufacturers to charge 7.50 pounds as a gallon of linseed oil on deliveries made, and the purchaser knew of such custom and, also, that in the various deliveries made to it, charge was made on the basis of 7.50 pounds to the gallon. The action was instituted to recover the overpayments made, and it was held that recovery could not be had.

Chancellor Kent says: "The courts do not undertake to relieve parties from their acts and deeds fairly done on a full knowledge of facts, though under a mistake of the law. Every man is to be charged at his peril with a knowledge of the law. There is no other principle which is safe and practicable in the common intercourse of mankind. And, to permit a subsequent judicial decision in any one given case, on a point of law, to open or annul everything that has been done in other cases of the like kind, for years before, under a different understanding of the law, would lead to the most mischievous consequences. Fortunately for the peace and happiness of society, there is no such pernicious precedent to be found. This case, therefore, is to be decided according to the existing state of things when the settlement in question took place." (*Lyon* v. *Richmond*, 2 Johns. Ch. (N. Y.) 51.) And all of the later adjudications appear to be in accord with the doctrine so forcibly stated by the learned chancellor.

The law favors the settlement of business transactions by the parties, and when they have made such settlements they will be held bound thereby, in the absence of fraud or mistake. And, as is made clearly to appear in this case, there was no mistake made by the plaintiff in acceptance of the monthly settlements. He was fully conversant with his rights under the law, as well as the terms of the contract, by reason whereof, under our own previous holding in *Johnson* v. *Gallatin Valley Milling Co.*, supra, the plaintiff will not be permitted to surcharge the accounts and recover the difference·

On every principle of justice and fair dealing, it was the plaintiff's duty, on receipt of the monthly statements, and before accepting and retaining remittances made in settlement in accordance with such statements, to have made examination of the accounts (and the presumption is that he did so), and, if dissatisfied with the computation made, to have raised objection thereto and refused the remittance as a settlement in full of his rights. (*Long-Bell Lumber Co.* v. *Stump* (C. C. A.), 86 Fed. 574.)

It would be as mischievous as an *èx post facto* law to permit a subsequent decision to overturn the fair compromises and contracts of individuals made under a different, though incorrect, view of the law. The community would be in a miserable condition, if at every change of opinion upon questions of law, all previous contracts and settlements were to be overturned. Men could never know the end of their controversies were such rule to prevail. (*Cooley* v. *County of Calaveras,* 121 Cal. 482, 53 Pac. 1075.)

The correct principles of law having been applied to the facts, we are satisfied with the result reached in our previous holding, and find no reason to recede therefrom.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.