(No. 26926.—

SVITHIOD SINGING CLUB *et al.*, Appellants, *vs.* GEORGE B. McKIBBIN, Director of Finance, *et al.*, Appellees.

*Opinion filed November 18, 1942.*

ADELBERT BROWN, KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, FOLSOM, GROSSBERG, BRILL & MAY, SIEBEL & SIEBEL, OSBORNE, KLINE & McGURREN, and PORGES & FRANK, for appellants.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of counsel,) for appellees.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

By this direct appeal, the revenue being involved, appellants seek the reversal of a decree of the circuit court of Cook county dismissing for want of equity, on motion of appellees, the complaints of the original plaintiff and the intervening plaintiffs.

The issue involved is whether a social club, organized as a nonprofit corporation, which serves food and drink to its members but not to the public, is subject to the Illinois retailers' occupation tax. (Ill. Rev. Stat. 1941, chap.

120, par. 440 *et seq.*) The original plaintiff, Svithiod Singing Club, is an Illinois nonprofit corporation. Its primary object is the promotion of social intercourse among the members of the club and the advancement of the social arts and sciences. As an incident thereto and for the purpose of furthering such primary object, it furnishes food and drinks to its members, though not to the general public. Other like clubs were permitted to intervene, and also are appellants here. Appellee, Director of Finance, promulgated and is enforcing a rule subjecting appellants to the tax. Such taxes were paid under protest and a temporary injunction was entered under section 2a of an act in relation to the payment of public money into the State treasury. Ill. Rev. Stat. 1941, chap. 127, par. 172, p. 3069.

The points urged for reversal are that the court erred in holding that appellants, as private social clubs, are engaged in the business of selling tangible personal property at retail, within the act; and in holding that the act applies to nonprofit corporations such as appellants.

The act applicable to the present inquiry is entitled: "An Act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption." Section 2 of the act, insofar as applicable to the present inquiry, lays a tax upon "persons engaged in the business of selling tangible personal property at retail" for use or consumption, and not for resale. The rate imposed by the original act was three per cent of the gross receipts from such sales made in the course of such business. By amendment of the act, effective July 1, 1941, the tax was reduced to two per cent of ninety-eight per cent of the gross receipts from such sales after June 30, 1941. Ill. Rev. Stat. 1941, chap. 120, par. 441, sec. 2, p. 2661.

Appellants insist they are not "persons engaged in the business of selling tangible personal property," as that term is used in the act. They urge that the tax is upon

the business and not on any transaction of sale, and as their primary business or purpose is to furnish service to their members and not to transact sales, they do not·come within the intent or spirit of the act.

It is settled that the tax so imposed is an occupation tax upon a class of vendors described in the act, and not a tax upon sales, though it is measured by the gross receipts from sales. (*Mahon* v. *Nudelman,* 377 Ill. 331; *Herlihy Mid-Continent Co.* v. *Nudelman,* 367 id. 600; *Reif* v. *Barrett,* 355 id. 104.) Not all vendors of personal property for use or consumption are subject to the tax. (*Revzan* v. *Nudelman,* 370 Ill. 180.) The class of vendors subject thereto must be determined from a construction of the act itself. Section 2 imposes a tax upon persons engaged in the business of selling tangible personal property at retail. By the last paragraph of section 1 it is declared that "isolated or occasional sale of tangible personal property at retail by a person who does not hold himself out as engaging in the business of selling such tangible personal property at retail does not constitute engaging in such business." This is a negative declaration which, though describing certain vendors who do not come within the act, does not define or describe those who· do. That class is described in section 2 of the act as "persons engaged in the *business* of selling tangible personal property at retail." Section 1 of the ,act defines "sale at retail" as transfer "for use or consumption and not for resale." In the glossary of the act the language persons "engaged in the business" of such selling is not defined, though the word "persons" is defined. Therefore we must seek the construction of that language in the usual, popular meaning attaching to the words used, unless the spirit and purpose of the act, as shown by its provisions, enlarges or alters that meaning. In *Landry* v. *Shinner & Co.* 344 Ill. 576, it is pointed out that "the plain and obvious meaning of the language used by the legislature is the safest guide to follow in construing any act." *Bradley*

*Supply Co.* v. *Ames,* 359 Ill. 162, *Revzan* v. *Nudelman, supra,* and 2 Lewis' Sutherland on Statutory Construction (2nd ed.) sec. 518, are to the same effect.

It follows that the word "business," as used in the act, is to be construed in the usual or popular meaning of the word, unless, as stated, the text or purpose of the act varies that meaning. The text and purpose of an act is to levy a tax against those in the business of selling at retail. Selling at retail is distinguished from wholesale in that the sale is in smaller quantities and the property sold is not sold for resale. The term "retailers' occupation tax" connotes commercial enterprise devoted to the business of making retail sales. This is indicated by the standards used, such as "gross receipts," "sales at retail," and the like. That the business which the act intends shall be included is a commercial business, is further indicated by the last paragraph of section 1 of the act, which provides, as stated, that isolated sales by one "who does not hold himself out as engaging in the business of selling such tangible personal property at retail does not constitute engaging in such business."

Courts, in seeking legislative intent, consider not only the language used, but also the object to be attained, or the evil to be remedied by the act. (*Inter-State Water Co.* v. *City of Danville,* 379 Ill. 41; *U. S. Industrial Alcohol Co.* v. *Nudelman,* 375 id. 342; *People ex rel. Auburn Coal and Material Co.* v. *Hughes,* 357 id. 524.) Prior to the passage of this act the expenses of State government were borne in part by direct taxation on both real and personal property, which, during the years of economic depression and its resultant reduction of property values, rendered that burden onerous. The problem was to provide a just tax to relieve property of that direct burden. It is patent that the merchandising business with its large stocks of wares and resulting larger need for police and fire protection, required more of the expenses of government than

real estate, which called for less governmental protection, and it is also apparent from these facts that the General Assembly in enacting the Retailers' Occupation Tax Act sought to tax the business of selling at retail, to arrive at some method of relieving property from direct taxation and to place the burden upon that class of business which not only enjoyed the greater part of governmental protection but which benefited by being conducted under that protection. That those engaged in the business of selling tangible personal property at retail have contrived to pass this tax on to the consumer, was neither within the intent of the General Assembly nor within the purpose of the act, as shown by its terms; but those facts do not indicate that the word "business" as used in the act should be construed in any other than the usual and popular meaning.

Webster defines "business" as "any particular occupation or employment, habitually engaged in, especially for livelihood or gain." This court in *Mahon* v. *Nudelman, supra,* and *Herlihy Mid-Continent Co.* v. *Nudelman, supra,* in distinguishing between the business of selling tangible personal property and that of providing service, held that where service rendered "is deemed an inseparable part of a commercial transaction and incident to it," the vendor is taxable. To be exempt because sales are isolated or casual the seller must be also one who "does not hold himself out as engaged in the business of selling such tangible personal property at retail." The quantity sold is not a test of the applicability of the tax. (*Herlihy Mid-Continent Co.* v. *Nudelman, supra; Franklin County Coal Co.* v. *Ames,* 359 Ill. 178.) We must not lose sight of the fact that certain "persons" are the only ones upon whom the tax is imposed. The tax is not a privilege tax imposed upon purchasers. It is not a property tax upon the items sold, but is an occupation tax upon a class of vendors engaged in the business of selling tangible personal property at retail. It seems clear from these considerations that

the term "business," as used in the act, is to be construed in its usual and popular sense, (*Revzan* v. *Nudelman, supra; Bradley Supply Co.* v. *Ames, supra,*) and, as used in the act, indicates the business of selling in the commercial sense. Are appellants of that type of vendor?

Taxing laws are strictly construed, and in cases of doubt as to their meaning are to be construed most strongly against the State and in favor of the taxpayer. Although strict construction does not require that the words used be given their narrowest meaning but are to be given their full meaning, the act is not to be extended by implication beyond the clear import of the language used. (*Revzan* v. *Nudelman, supra.*) It is thus clear that a tax is not due and payable where sales, though at retail and for use and consumption and not for resale, are merely incidental to a business which the vendor was licensed or authorized to transact. *Mahon* v. *Nudelman, supra; Babcock* v. *Nudelman,* 367 Ill. 626; *Adair Printing Co.* v. *Ames,* 364 id. 342; *A. B. C. Electrotype Co.* v. *Ames,* id. 360; *Burgess Co.* v. *Ames,* 359 Ill. 427.

With these rules in mind, we approach the problem whether appellants are in the business of selling tangible personal property at retail, in which the service provided is but incidental to the commercial transaction of selling, or is such selling incidental, merely, to the appellants' business of furnishing service as social clubs? That question, as applied to social clubs such as appellants, has not heretofore been directly passed upon by this court. That not all so-called social clubs are to be exempt from the tax is clear. Where the vendor assumes a name indicating a social club, while in fact he is in the business of selling at retail, and such name is for the purpose of promoting the sales of drinks and foods, such cannot be held to exempt the vendor, as his real purpose is to sell at retail, and the furnishing of music, dancing, or other forms of entertainment, since they are promotional schemes in aid of selling drinks and foods to the public, do not tend to

exempt such vendors from the act. In other words, there is a marked and substantial difference between *bona fide* social clubs, such as appellants, and road houses, and the like, though the latter may style themselves social clubs.

Appellants were each chartered and licensed by the State to operate a social club, not for profit. Their charters authorize their operation for the purpose of promoting social intercourse among their members and the advancement of social arts and sciences. They alleged in their complaint, and it is admitted by the motion to strike, that they are not organized to engage in an occupation having for its purpose the doing of business, but they are organized for the primary objects as stated. As an incident to their primary object of incorporation and for the purpose of furthering that primary object, they furnish tangible personal property, consisting of food and drink, to their members, though not to the general public.

It is generally well understood that a club, organized and chartered not for profit, has either stockholders or members, each of whom is entitled to all the privileges and benefits furnished by the club to all its members. All pay the same amount for the general benefits offered and afforded to each member. Not all the members enjoy the same form of amusement and the furnishing of different forms of entertainment involves the expenditure of money, not only for the purchase, but maintenance and operation of the different devices furnished by the club. Some members, in many cases the majority, do not care to avail themselves of the use of appliances furnished for their amusement or health; therefore, in order that such members be not burdened with the cost of acquiring, maintaining and operating such equipment, a charge is made for the use of that equipment to pay the cost of operation of it.

In the construction of this act, little of persuasive force is to be found in cases arising in other jurisdictions. However a case construing the language of an ordinance

similar to our act is *Cuzner* v. *California Club,* 100 Pac. 868. In that case the term "business," as used in an ordinance which imposed a license tax on businesses, trades, etc., was held to ordinarily mean business in the trade or commercial sense, carried on only with a view to profit or livelihood, and that an ordinance imposing a license tax on corporations conducting, managing or carrying on the business of a retail liquor dealer, does not apply to a *bona fide* social club, which sells liquor to its members and guests, but applies only to persons engaged in the business of selling liquor in the sense in which the term "business" is ordinarily used in that connection.

In *State* v. *University Club,* 35 Nev. 475, 130 Pac. 468, the State recovered a judgment against the club for State and county liquor license fees, under a State law requiring the payment of a State license upon the business of disposing of liquors at retail or wholesale. The case was tried on an agreed statement of facts. The Supreme Court of Nevada held the case presented the sole question of the liability of a *bona fide* social club, disposing of liquors to members and guests, to pay State and county retail liquor licenses. The title of the act relative to State liquor licenses, the form of the license prescribed in the act, and the provisions of the statute relative to county liquor licenses specifically referred to the "business" of disposing of liquors by retail or wholesale. It was in that case held that the term "business," as used in those statutes, clearly means business in the trade or commercial sense, and where a statute imposes a license upon persons engaged in the "business" of selling liquors, the courts have held that *bona fide* social clubs are not liable to take out such a license for the reason that they are not engaged in the "business" within the meaning of the statute, citing *Cuzner* v. *California Club, supra; State* v. *Austin Club,* 89 Tex. 20, 33 S. W. 113; *Piedmont Club* v. *Commonwealth,* 87 Va. 540, 12 S. E. 963; *Barden* v. *Montana*

*Club,* 10 Mont. 330, 25 Pac. 1042; *Manassas Club* v. *Mobile,* 121 Ala. 561, 25 So. 628; *Tennessee Club* v. *Dwyer,* 11 Lea (Tenn.) 452; *State* v. *New Orleans Club,* 116 La. 46, 40 So. 526; *Koenig* v. *State,* 33 Tex. Cr. 367, 26 S. W. 835; *State* v. *Duke,* (Tex.) 137 S. W. 654.

In *Union League Club of Chicago* v. *United States,* 4 Fed. Supp. 929, the plaintiff sought to recover funds paid the Internal Revenue Collector in taxes on dues and memberships of the club from August 26, 1924, to July 23, 1928, on the ground that the activities of the club, notwithstanding its charter designated it a social club not for profit, were those of a business and not a social club, and therefore it was not liable for the taxes paid under the Federal Revenue Act. It was held that in determining whether a club is a "social club" and liable for a federal tax on dues and initiation fees, the primary question is whether the social features of the club are merely incidental or are the material purpose of its organization; that where the social features are numerous and important to the club and especially where necessary to its existence or prosperity, the club is a "social club" and subject to a tax on the dues and initiation fees under the Federal Revenue Act.

In *Engineers' Club of Philadelphia* v. *United States,* 42 Fed. Supp. 182, the plaintiff was organized to promote the arts and sciences connected with engineering and to operate a club house. It had a large average annual income. It was held that the social features of the club were not merely incidental to, but were a material purpose of the club and an important and substantial part of its activities, and the claim that the club was not a social club and therefore not liable for a federal tax on dues and initiation fees, was denied.

Black, in his Work on Intoxicating Liquors, section 142, says: "If the club is organized and conducted in good faith, with a limited and selected membership really own-

ing its property in common, and formed for social, literary, artistic or other purposes, to which the furnishing of liquor to its members would be merely incidental, in the same way and to the same extent that the supplying of dinners or daily papers might be, then it cannot be considered as within either the purpose or letter of the law."

Appellants' charters do not permit them to enter into and transact business for profit. The serving of food and drinks cannot, in a commercial sense, be termed appellants' business. It is rather an incidental accommodation to their members desiring such. It seems clear that the serving of meals and drinks is but incidental to the object for which appellants were chartered. It also seems clear that the operation of certain equipment, such as a gymnasium or golf course, for the use of which a charge is made to the members, and to whom its use is restricted, does not change the primary object or purpose of the club from a nonprofit corporation whose object is the promotion of social intercourse and the advancement of the social arts and sciences, to a business corporation engaged in commercial transactions. That those members who desire food and drink should pay for the same, seems clearly the only equitable way of apportioning the expenses of the club among its members. We do not believe it can logically be said that the sale of food and drink to those members of a club who desire it, and not to the general public, is a transformation or change of the objects of a club, not for profit, to business of selling tangible personal property at retail, so as to bring it within the meaning contemplated by the Retailers' Occupation Tax Act.

While, as argued by appellees, the number and continuity of sales is an element of the commercial business of selling, such cannot be said to be a controlling factor. If one sale be an incident to the promotion of a primary purpose of affording service, it seems obvious that continued sales may well be incidents to a continuous promo-

tion of such primary purpose. In fact, it is a matter of common knowledge that social clubs of the character of appellants could not hold their members and so would fail to continue in their primary purpose of affording service if they did not furnish food and drink to them. Here, then, is a test which marks such sales from the commercial business of selling tangible personal property at retail. Applying that test it seems clear that affording food and drink to members of clubs such as appellants, is but incidental to its primary purpose of affording services. Appellees cite *Brevoort Hotel Co.* v. *Ames*, 360 Ill. 485, and *Continental Can Co.* v. *Nudelman*, 376 id. 446, as authority for the contention that the tax is to be applied to appellants. In each of those cases the vendor was engaged in commercial business and the furnishing of food was evidently a part of such business or was for the purpose of promoting such commercial business. The furnishing of food and drinks by appellants, though also promotional in character, promoted not a commercial business but a social organization.

Appellees' motion to dismiss admitted the allegations of the complaints that each was a nonprofit corporation, organized not for the purpose of engaging in an occupation or purpose of doing business but primarily and directly for the purpose of promoting cultural arts among its members, and at all times since its respective organization, up to the time of filing the suit, was directly and specifically carrying out the purposes and objects for which each was respectively organized. We are of the opinion that it was not the intention of the General Assembly that such vendors of food and drink should be taxed.

The decree of the circuit court is reversed and the cause remanded with directions to grant the relief as prayed.

*Reversed and remanded, with directions.*