(Nos. 27705, 27706, 27707.—

THE OHIO OIL COMPANY *et al.*, Appellants, *vs.* WARREN
WRIGHT, State Treasurer, *et al.*, Appellees.

*Opinion filed March 21, 1944.*

BROWN, HAY & STEPHENS, ROBERT A. STEPHENS, JR., both of Springfield, GEORGE D. BRABSON, of Findlay, Ohio, THOMAS J. REILLY, of Houston, Tex., W. L. SUMMERS, of Urbana, and JOHN D. WATKINS, of New York, N. Y., for appellants.

GEORGE F. BARRETT, Attorney General, (HARRY L. ARNOLD, and WILLIAM C. WINES, of counsel,) for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

In September, 1941, appellant, The Ohio Oil Company, filed in the circuit court of Sangamon county its complaint

for injunction and relief against the Treasurer of the State of Illinois and others to test the validity of "An Act in relation to a tax upon persons engaged in the business of producing oil in this State, and providing for the collection and payment of the tax by persons handling or receiving the oil so produced." (Approved May 29, 1941.) The amended complaint alleges the taxes required to be paid by said act were paid under protest, and this suit is for the recovery of all sums so paid, and enjoining and requiring the State Treasurer to hold the same in the protest fund, and not pay them into the State treasury, pending the determination of the case.

The complaint further alleges the tax violates the constitution in many ways. The defendants filed a motion to strike and dismiss, which was allowed by the court, and a temporary injunction theretofore issued was dissolved and the complaints were dismissed for want of equity. This case in this court bears the number 27705.

Suits alleging substantially the same facts were filed by the Superior Oil Company, designated in this court as No. 27706, and by the Shell Oil Company, Inc., designated as No. 27707. All were tried at the same time and the briefs and abstracts in the three cases were filed as one. The challenge of the constitutionality of the law authorizes a direct appeal to this court.

The statute purports to place a tax upon the production of oil both as to the actual operator and as to the landowner who executed the lease. (Ill. Rev. Stat. 1941, chap. 120, pars. 416.1 to 416.19.) In a general way it places a tax of three per cent upon the production of oil based upon ownership of the oil at the time it is taken from the land. It makes the operators drilling for the oil liable as well as the retained interest of the lessor, which is designated royalty. It provides for the collection of the tax by making the producers or the purchasers, receivers or managers, liable to make returns to the Director of Finance.

It requires the purchasers, as well as the producers, to obtain a registration certificate, make monthly returns, and be subject to examination by the agents of the Department of Finance. It provides severe penalties for infraction of the law, and for hearings in case of dispute as to liability, for review by the circuit courts, and authorizes the Department of Finance to make and provide rules for its administration. It is unnecessary to set forth all of the provisions of the act, as the principal questions revolve around sections 1, 2 and 19 of the act. Section 1 contains the definitions of the different terms used, and contains the following: "'Producer' or 'person engaged in the business of producing oil' means any person owning oil or having a royalty interest therein at the time it is taken from the earth or water in this State, whether taken by him or some other person in his behalf." (Ill. Rev. Stat. 1941, chap. 120, par. 416.1.) Section 2 provides: "A tax is imposed upon each person engaged in the business of producing oil in this State at the rate of three per cent (3%) of the value on all oil which is produced in this State by such person after June 30, 1941. This tax shall be borne by each such person in proportion to his interest in the value of oil so produced." Ill. Rev. Stat. 1941, chap. 120, par. 416.2.

The Ohio Oil Company operates certain oil lands under leases from the owners and produces oil therefrom, and pays to the owners of the land, their lessors, the royalty provided in the lease, usually the value of one eighth of the oil after it is taken from the ground and into the pipe line. It also has assigned some of its leases, and retains a royalty and sometimes an overriding royalty interest therein, and sometimes buys oil from other operators which it renders available for use in its own refineries.

Many constitutional objections are urged by appellants, the first of which to engage our attention is whether the act as a whole violates section 1 of article IX of the con-

stitution of Illinois, both as to oil companies owning and operating leases, and as to royalty holders owning the fee in the land. This section provides in substance that the General Assembly shall raise revenue by levying a tax by valuation so that every person and corporation shall pay taxes in proportion to the value of his, her or its property, the value to be ascertained by some person elected or appointed as directed by the General Assembly. This section of the constitution authorizes a direct tax on property based upon valuation, which is required to be uniform in its operation. These taxes are commonly designated property taxes. The constitution also authorizes the legislature to impose certain excise taxes, which in this State have been limited to occupation, privilege and franchise taxes, which, however, must be uniform as to the class upon which they operate.

The first question for decision is whether the tax in question is levied upon the oil as property of the person entitled to drill for or produce the oil, or of the royalty holders, or both of them; because, if such is the case, it may not be levied in the manner specified in the act, since it is not ascertained and valued by the officers designated by the General Assembly. If it should appear that only one of the class of persons required to pay the tax is exempt from its application, then the further question occurs as to whether the tax as to the remaining party complies with the requirements of uniformity necessary for the legality of the imposition.

Appellants place considerable stress upon the proposition that leases to drill for oil and to receive royalties are real estate and therefore not subject to a tax on production. On the other hand the appellees contend it is an occupation tax, or, in the alternative, a privilege tax, and that therefore no tax is levied upon property requiring valuation or uniform assessment.

When the definition of producer or person engaged in the business of producing oil is transposed from section 1 to section 2 which imposes the tax, we find that the *producer* of oil, as defined in the act, is taxed on the value of the oil "at the time it is taken from the earth or water." It is true we have held that oil underlying land is included within the term minerals, and is a valuable right and a part of the land, (*Jilek* v. *Chicago, Wilmington & Franklin Coal Co.* 382 Ill. 241,) and that the property granted to a lessee or driller by the fee owner is a right to explore and reduce oil to possession and constitutes a freehold estate in land, (*Greer* v. *Carter Oil Co.* 373 Ill. 168,) yet the statute does not purport to tax these interests. Section 1 refers to the producer as a person "owning oil," not when it is in the ground or in place, but "at the time it is taken from the earth." These words clearly import it is the ownership of severed oil, and not the interest in land or real estate that creates the class upon which the tax is imposed.

The ordinary construction of the terms used, when the whole context is considered, indicates that the value of this oil at the time of separation fixes the basis of the amount to be paid, but the tax is imposed upon the business of separating the oil from the real estate and putting it into the channels of commerce. With this conception of what the legislature has enacted it can readily be seen a different situation is presented as to an oil company owning an interest in lands on which it has a right to drill wells and produce oil, and does by its operations produce oil, and that of an owner of land who has executed a lease or deed authorizing an oil company to go upon his land and explore for and procure oil, even though the part interest which he may have in discovered oil occurs contemporaneously with the interest of the lessee in the other part of the oil. Inasmuch as the complaint purports to be not only on behalf of the oil company, but on behalf of other pro-

ducers and royalty owners and part-interest owners of oil, we will first determine the situation of the so-called royalty owner.

The business of extracting oil from the earth and of transporting and marketing it is different from handling other minerals, and has been the subject of legislation considering it to be a class by itself. The interest possessed by the lessor or owner of the fee in the land has also had consideration as to whether it constitutes property or income, or if it be an occupation. It is necessary to determine whether the royalty owner is in an occupation, or whether he is in the receipt of income; because if in the first classification, he may be subject to an excise tax, and if in the other classification, he can be taxed only as an owner of property in the manner required by the constitution.

In *Burnet* v. *Harmel*, 287 U. S. 103, 77 L. ed. 199, it was determined that royalty from oil or gas wells is income and requires a return as such, and does not constitute a conversion of capital. In *Stoddard* v. *Illinois Improvement and Ballast Co.* 275 Ill. 199, we held that a contract providing for the royalty on minerals extracted from lands constituted a lease, and that the royalty agreed to be paid constituted rent. The right to receive royalties constitutes an interest in land, but accrued royalties are personal property. (*United States* v. *Noble*, 237 U. S. 74, 59 L. ed. 844; *Callahan* v. *Martin*, 3 Cal. 2d 110, 43 Pac. 2d 788.) In *Von Baumbach* v. *Sargent Land Co.* 242 U. S. 503, 61 L. ed. 460, royalties from mineral leases are held to be rent, and consequently income. It follows *Boeing* v. *Owsley*, 122 Minn. 190, 142 N. W. 129, and *State* v. *Evans*, 99 Minn. 220, 108 N. W. 958, where royalties are defined as "the compensation which the occupier pays the landlord for that species of occupation which the contract between them allows." In *Bachrach* v. *Nelson*, 349 Ill. 579, we held income was property, after an exhaustive review of

authorities throughout the country. A graduated income tax was there held unconstitutional because a tax upon the income of property was in reality a tax upon the property itself; and we adopted the language in *Pollock* v. *Farmers' Loan and Trust Co.* 157 U. S. 429, 39 L. ed. 759, in which it was said: "The name of the tax is unimportant. The real question is, Is there any basis upon which to rest the contention that real estate belongs to one of the two great classes of taxes and the rent or income which is the incident of its ownership belongs to the other? We are unable to perceive any ground for the alleged distinction. An annual tax upon the annual value or annual user of real estate appears to us the same in substance as an annual tax on the real estate, which would be paid out of the rent or income." In the same case on rehearing, 158 U. S. 599, 39 L. ed. 1108, after another review of the authorities, the court announced its conclusion as follows: "First we adhere to the opinion already announced, that taxes on real estate being indisputably direct taxes, taxes on rents or income of real estate are equally direct taxes. Second, we are of the opinion that taxes on personal property or on the income of personal property are likewise direct taxes." Also see *Thompson* v. *McLeod,* 112 Miss. 383, 73 So. 193; *Jensen* v. *Henneford,* 185 Wash. 209, 53 Pac. 2d 607.

In *Reif* v. *Barrett,* 355 Ill. 104, in discussing the difference between an occupation tax and a property tax we said: "A property tax is levied merely for the purpose of raising revenue and is levied against property. It does not seek or in anywise attempt to control the use, operation or regulation of the property. When the tax is raised the mission of the property tax has been fulfilled. A property tax has nothing whatever to do with the question of privilege, license or permission." *Cook County* v. *Fairbank,* 222 Ill. 578, is analogous in principle. We there decided a law fixing a graduated fee in making application for letters

of administration, based upon the value of the estate, was invalid as an attempt to indirectly tax the property of such estates for revenue purposes.

Since it has been consistently held that mineral royalty is rent, or in the nature of rent, and as such is income, and the income of land may not be taxed because it is in effect a tax upon land itself, the law under consideration as to royalty owners would fall for this reason.

There is another substantial objection to the law as it affects royalty owners in addition to that just pointed out, and that is: can the owner of land from which income is derived, either as ordinary rent or as royalty from mineral rights, be designated an occupation? One of the purposes of the title of an act is to inform the public and the persons affected thereby of what it is supposed to reach. (*People* v. *Mahumed,* 381 Ill. 81.) The title places a tax upon those engaged in the *business* of producing oil. One of the ordinary definitions of business is occupation or employment habitually engaged in. It is thus clearly intended to be an occupation tax. In construing statutes the ordinary meaning of words is given effect, so here the title of the act indicates that it was intended to reach persons who were habitually engaged in the occupation or employment of producing oil. Can such persons, as royalty owners, be considered as being habitually in the occupation or employment of producing oil, and be thus subject to an occupation tax?

While the tax is imposed by section 2 of the act upon the "producer," and the latter is defined by section 1 as including the "Royalty owner at the time the oil is taken from the land," both sections must be construed in connection with the title of the act, which imposes a tax upon "persons engaged in the business of producing oil." As just pointed out, business ordinarily means the habitual engagement in an employment or occupation. (Webster's New International Dictionary; *City of Chicago* v. *Ames,*

365 Ill. 529.) Thus the title and context together indicate the tax is upon the business, and the effort made to include the receipt of income on property under an oil lease as a business of producing oil, when in truth the royalty owner does no more than receive the value of the oil as the result of the work of one in fact engaged in the production of it.

This subject has engaged the attention of courts many times in construing statutes imposing excise taxes, and in most instances it has been held the receipt of income or rent constituted neither engaging in business nor being a producer. Thus, in *Zonne* v. *Minneapolis Syndicate,* 220 U. S. 187, 55 L. ed. 428, the point involved was whether the defendant was required to pay an excise tax levied against corporations carrying on or doing business, etc. The company taxed was originally organized to build and lease office space and let business rooms. It later made a long-time lease of all of its property and amended its charter, so that its only activity from then on was to distribute its income among stockholders. It was held the excise tax was not applicable to it. This case was adhered to in *McCoach* v. *Minehall & Schuykill Haven Railroad Co.* 228 U. S. 295, 57 L. ed. 842, and the rule announced that "the receipt of income through property or investments by a company that is not engaged in business, except the business of owning the property, maintaining the investments, collecting the income and dividing it among stockholders" did not fall within the provision of the same statute. A tax of fifty cents a gallon upon whisky in bond placed upon the business of owning and storing same in a warehouse is a property tax, and not an occupation or license tax. (*Dawson* v. *Kentucky Distillers Co.* 255 U. S. 288, 65 L. ed. 638.) The fact these cases concerned corporations does not prevent their application to the facts in this case.

While the combined effect of sections 1 and 2 makes the tax apply to owners of royalty at the time the "oil is

taken from the earth," still the object expressed in the title is to tax those "engaged in the business of producing oil." If a corporation is not engaged in business by distributing income, *a fortiori* a land owner cannot be in the business of producing by merely accepting the value of the royalty for the oil which the lessee has by mining operations taken from the land. These cases, in principle, and those of other jurisdictions specifically hold that the owner of royalty is not engaged in the production of oil. (*Norum* v. *Ohio Oil Co.* 83 Mont. 352, 272 Pac. 534; *Standard Oil Co.* v. *Policy Jury,* 140 La. 42, 72 So. 802; *Kanawha Valley Bank* v. *United States Fuel Co.* 121 W. Va. 96, 1 S. E. 2d 875.) It is true, as appellees state, the statute involved in these cases levied a tax upon "producers" of oil, and the question arose when it was contended unsuccessfully that royalty holders came within the term "producer." We think these cases are applicable because, here, the legislature has attempted to say that one who in fact is not in business, or is not in fact a producer, is one by legislative fiat. Or, to further illustrate, a landowner who may not be taxed on the income from an oil lease because it is a property tax, may on the same income be required to pay an excise by declaring him to be engaged in an occupation contrary to the fact.

Appellees call our attention to *Group No. 1 Oil Corporation* v. *Sheppard,* 89 S. W. 2d (Texas,) 1021, and *Barwis* v. *Sheppard,* 299 U. S. 33, 81 L. ed. 23, as authority upholding the validity of the present statute. The State court held that the legislature could validly declare the owners of royalty interests in the oil produced to be engaged in the occupation or business of producing oil. The Supreme Court of the United States affirmed the tax by holding it was a valid excise levy. The question is not presented as to whether royalty constituted income or property, and as such taxable in this State only by valuation under section 1 of article IX of the constitution. In its

opinion the Supreme Court strongly implied that as to the royalty owner it was not in fact an occupation tax. These cases would seem to have little weight where one of the principal questions for determination is whether the royalty owner receives income which is property and not subject to an excise tax.

Attention is also called to *Flynn, Welch & Yates* v. *State Tax Com.* 38 N. M. 131, 28 Pac. 2d 889, where a production tax was levied both upon the lessee and the royalty holder. The tax was held valid as an occupation tax as against the lessee and another kind of a tax as to the royalty owner. In the absence of a limitation, such as contained in the Illinois constitution, it has little value as a precedent to be followed here.

In Minnesota the royalty owner is subject to a tax upon the value of minerals taken from the ground, separate from the tax imposed upon producers, but it has been held this tax against the royalty owner is a property tax, and not invalid, since the constitution of Minnesota does not prohibit double taxation of real estate, which, of course, would not be controlling here. *Lake Superior Consolidated Iron Mines* v. *Lord,* 271 U. S. 577, 70 L. ed. 1093; *Marble* v. *Oliver Mining Co.* 172 Minn. 263, 215 N. W. 71.

Royalty may be and usually is owned by diverse interests, separate from the person actually engaged in production operations. It may be vested in the owner of the fee who may be an adult, minor, widow, trustee, executor or other person. It may also be owned by one who has purchased a mineral interest from the original landowner, or even subdivided into many shares. Such royalty owner may not drill for nor take oil from the leased premises without the consent of the lessee, has no control over such operations, and cannot prevent the lessee from entering upon the surface of the premises to produce oil. (*Daughetee* v. *Ohio Oil Co.* 263 Ill. 518.) It manifestly is not a fact that such royalty owners are in the business of producing oil any

more than a stockholder by accepting the dividends from a corporation is in the corporate business, whether the dividends be cash or property in kind. The legislature does not have the power by legislation to declare that not to be a fact which everyone knows is a fact, (*Winter* v. *Barrett,* 352 Ill. 441,) and, by the same reasoning, cannot legislate that to be a fact which everyone knows is not a fact. To make the fact of ownership of oil, alone, the criterion of engaging in business of producing oil so obviously includes persons who may not and cannot be in such business as to render it obnoxious to the constitution.

In view of the limitation imposed by section 1 of article IX of the State constitution, and our determination that income is property, it is clear the act in question has attempted to levy an occupation or excise tax upon property which may only be taxed by valuation under the constitution. We are of the opinion, therefore, that the production tax is invalid as against the royalty interests retained by the lessor in an oil lease, or acquired by assignment or other means.

A different question presents itself with respect to a person or corporation engaged in the operation of drilling or mining for the purpose of taking oil from the land, either as lessee or as an independent contractor. It is readily apparent that when such person or corporation erects derricks, drills holes, pumps oil, puts in the pipe line and continues its operation in severing the oil from the land until it is exhausted, that he or it is habitually engaged in the employment or occupation of producing oil, and could be in truth and in fact said to be in an occupation, as illustrated by the cases of *City of Chicago* v. *Ames,* 365 Ill. 529; *Winter* v. *Barrett,* 352 Ill. 441, or *Svithiod Singing Club* v. *McKibbin,* 381 Ill. 194. And a tax upon such producers has been uniformly upheld, not as a tax upon property, but as one upon an occupation. It comes clearly within the distinction of those engaged in an occupation,

announced in *Reif* v. *Barrett*, 355 Ill. 104, where we said:
"On the other hand an occupation tax has one of two missions: either to regulate and control a given business or occupation, or to impose a tax for the privilege of exercising, undertaking or operating a given occupation, trade or profession. Its effect is to license a person engaged in a given calling or occupation. A license in form may not be issued to a taxpayer, but the payment of the tax is the license under the authority of the State to engage in such occupation. Regulation is not a necessary adjunct of an occupation tax."

The validity of such a tax as applied to the operating company has been sustained in *Group No. 1 Oil Corporation* v. *Sheppard*, 89 S. W. 2d 1021; *Oliver Mining Co.* v. *Lord*, 262 U. S. 172; *Cumberland Pipe Line Co.* v. *Commonwealth*, 15 S. W. 2d (Ky.) 280; *Swiss Oil Co.* v. *Shanks*, 270 S. W. (Ky.) 478; *Mid-Northern Oil Co.* v. *Walker*, 65 Mont. 414, 211 Pac. 353; *Norum* v. *Ohio Oil Co.* 83 Mont. 353, 272 Pac. 534. We have no doubt that as to the company operating the lease and doing the actual production work an occupation tax may be properly levied, provided the constitutional requirements of classification and uniformity are observed.

Section 1 of article IX of the constitution, in addition to providing for the taxation of property by valuation fixed by persons appointed by law, also provides "The General Assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, innkeepers, grocery keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, vendors of patents, and persons or corporations owning or using franchises and privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates." Section 2 of article IX provides that "specification of the objects and subjects of taxation shall not deprive the General Assembly

of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed in this constitution."

We have held that these two provisions do not prevent the legislature from placing a tax on some other business or occupation than that specifically enumerated in section 1. (*Winter* v. *Barrett*, 352 Ill. 441; *Bachrach* v. *Nelson*, 349 Ill. 579; *Bessette* v. *People*, 193 Ill. 334.) However, such tax must be uniform as to the class upon which it operates, as is expressly provided by the constitution. A tax upon the occupation of producing oil is just as logical and valid a classification as is the occupation of engaging in the retail sale of tangible personal property for use or consumption, but like that tax it must operate uniformly upon a class. The designation of the persons composing a class may not be arbitrary or capricious, and uniformity may be violated by including those in fact not within the class, (*Banghart* v. *Walsh*, 339 Ill. 132; *Wedesweiler* v. *Brundage*, 297 Ill. 228; *Scully* v. *Hallihan*, 365 Ill. 185; *Svithiod Singing Club* v. *McKibbin*, 381 Ill. 194,) as well as by excluding those properly within it. *Lippman* v. *People*, 175 Ill. 101; *Winter* v. *Barrett*, 352 Ill. 441; *City of Chicago* v. *Ames*, 365 Ill. 529.

As we have pointed out, the Oil Production Tax Act includes persons who are not in the business of producing oil, and it seems clear that limiting the tax to owners of oil at the time it is taken from the earth excludes others who are properly within the class of being engaged in the business of producing oil. The right vested in the lessee to explore for oil and reduce it to possession does not exhaust the class of those in the business of producing oil.

It appears from the complaint of the Ohio Oil Company that it has over a period of years become the owner of certain oil leases; that from time to time it has assigned leaseholds to others, whereby the exclusive right to explore, drill for and produce oil was transferred to assignees

reserving no right to participate in such business, and only retaining royalties; that in other instances it has operated leases owned by it, producing oil which it delivers to its own refinery, and certain of its oil is sold to other persons engaged in the business of producing oil; and that by reason of the diverse character of its operations it comes within the definition not only of a producer, but also of a manager and receiver of oil as defined by the statute, and in all three capacities is subject to the requirements and penalties of the act.

It is also apparent that a producer as defined by the act may drill a well and all of the oil obtained therefrom may go to the owner of the land, who has not made or executed a lease, and the compensation of such driller may come from a money payment, or from the right to obtain leaseholds, or drilling rights for oil on adjacent lands. So, also, the lessee, having the sole and exclusive right to explore, may sublet the right to an asignee or independent contractor upon a cash basis for a price fixed upon the amount of production. The driller in this case would not own any land or any oil when severed, but would in fact be producing oil. Other illustrations of the difficulty in applying ownership as a test of the occupation is presented by the common practice of communizing leases, and of well-spacing agreements among landowners, usually for the purpose of conserving oil.

The word "producer" is not synonymous with "owner." The first means to make economically valuable; to make or create so as to be available for the satisfaction of human wants. (Webster's International Dictionary.) Owner, on the other hand, means to possess; to have or hold as property. (Webster's International Dictionary.) He who has dominion of a thing, real or personal, which he has a right to enjoy and do with as he pleases. (Bouvier.) As the act was written, a tax was imposed upon all the oil produced, since it included everyone who owned it at the time

of separation, and the oil operator was taxed on his occupation in proportion to his ownership of the total product produced. The legislature, however, regarded the production of oil as including all the oil, not only by prescribing a tax upon the entire ownership, but by declaring the tax to be on "all oil produced in the State." The operators are, of course, in fact producing all this oil but do not own all of it. When we must exclude royalty the test of ownership fails in uniformity, for one operator may produce $1000 worth of oil and own seven eighths of it, another produce a like amount and, by reason of overriding royalties, own six eighths of it, and another, under an oil-payment contract, own none of it but have an exclusive right to oil in another tract not yet drilled. Under these diverse conditions the ownership test would exact, respectively, per $1000 value of production, $26.25 from one, $22.50 from another, and nothing from the third, yet all would produce the same amount of oil in value. Thus the measure of the tax is not uniform in application to the member of the class engaged in the taxed occupation of producing oil.

The title of the act properly included all of the class by using the words "An act in relation to a tax upon persons engaged in the business of producing oil," but we have held the title may be limited by the language of the body of the act. (*People* v. *Fensky,* 297 Ill. 440.) The definition of "producer" and "persons engaged in the production of oil" contained in the body of the law definitely limited the general use of the words employed in the title, with the result that many persons properly in the business of producing oil were excluded. This results in a violation of the constitutional provision requiring uniformity in the class upon which the law is to operate, not alone from the fact that a part, only, of producers is included and ownership of the oil at the time it is severed made the sole test to determine those who are engaged in the occupation, but from the further fact that the invalidity of the act as to royalty

owners leaves the act lacking in uniformity as to actual producers.

It is, however, contended that section 19 cures any defect which may be occasioned by any part of the act being held invalid. This section reads as follows: "If any provision of this Act is unconstitutional or invalid for any reason or if any person upon whom this Act imposes a tax is not taxable as a person engaged in the business of producing oil in this State, it is the intention of the Act that such persons as are engaged in the business of producing oil in this State shall pay the tax with respect to such production at the rate fixed herein measured by the value of oil produced by them in this State and that the unconstitutionality or invalidity of any part of this Act shall not affect the remainder of this Act." This section in unmistakable language provides for an alternative classification under which the production tax may be applied. It, in clear language, says that (a) if any provision is unconstitutional, or (b) if any of the producers mentioned therein are not taxable, then the legislature intends that such persons as are engaged in the business of producing oil shall pay the designated tax. In other words, if royalty holders are not taxable they shall be excluded; or, if producers, as defined, does not include all within the class, those not included shall be added. Literally interpreted this section would result in a new statute going into effect as a result of the judgment of this court deciding that either some classes were improperly included, or other classes improperly excluded. The new law would be created by this court and not by the General Assembly, because it enacted a different one. This would amount to a delegation of legislative powers to the courts, which is contrary to article III of the constitution, as well as numerous decisions of this court. *Funkhouser* v. *Randolph*, 287 Ill. 94; *North* v. *Board of Education*, 313 Ill. 422; *People* v. *Commonwealth Edison Co.* 367 Ill. 260.

224

We are of the opinion that the lack of uniformity and proper designation of the class of those properly engaged in the production of oil is not cured by section 19.

Many other constitutional questions are discussed in the briefs, unnecessary to pass upon, because what we have herein said requires us to hold the whole act invalid.

The matters herein discussed have been applied to the complaint of The Ohio Oil Company, but the facts set out in the Superior Oil Company case, No. 27706, and the Shell Oil Company case, No. 27707, differ only in degree, and are subject to the application of what we have said herein.

In view of the foregoing, the decrees of the circuit court of Sangamon county are reversed and the causes remanded, with directions to enter decrees in favor of the plaintiffs, not inconsistent with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. Chief Justice Smith took no part in the consideration or decision of these cases.