# Illinois Official Reports

## Appellate Court

*Board of Education of Woodland Community Consolidated School District 50 v. Illinois State Board of Education*, 2018 IL App (1st) 162900

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF EDUCATION OF WOODLAND COMMUNITY CONSOLIDATED SCHOOL DISTRICT 50 and THE BOARD OF EDUCATION OF FREMONT SCHOOL DISTRICT 79, Plaintiffs-Appellees, v. THE ILLINOIS STATE BOARD OF EDUCATION and THE BOARD OF DIRECTORS OF PRAIRIE CROSSING CHARTER SCHOOL, Defendants-Appellants. |
| District & No. | First District, Sixth Division<br>Docket Nos. 1-16-2900, 1-16-2927 cons. |
| Filed | March 23, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-07942; the Hon. Neil H. Cohen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Brett E. Legner, Deputy Solicitor General, of counsel), for appellant Illinois State Board of Education.<br><br>Respicio F. Vazquez, of Franczek Radelet P.C., of Chicago, for other appellant.<br><br>James A. Petrungaro and Adam Dauksas, of Scariano, Himes & Petrarca, Chtrd., of Chicago, for appellees. |

| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion. |
| | Justices Cunningham and Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1    The defendants, the Illinois State Board of Education (State Board) and the Board of Directors of Prairie Crossing Charter School, appeal from an order of the circuit court granting the joint motion for summary judgment in this declaratory judgment action filed by the plaintiffs, the Board of Education of Woodland Community Consolidated School District 50 (Woodland) and the Board of Education of Fremont School District 79 (Fremont) (collectively referred to as the School Districts). The defendants also appeal from the circuit court's denial of the State Board's cross-motion for summary judgment. For the reasons which follow, we affirm the judgment of the circuit court.

¶ 2    The following factual recitation is undisputed. Woodland and Fremont are bodies politic organized and existing under article 10 of the School Code (105 ILCS 5/art. 10 (West 2012)). Prairie Crossing Charter School (Prairie Crossing) is a charter school organized and existing pursuant to the Charter Schools Law (105 ILCS 5/27A-1 *et seq.* (West 2012)).

¶ 3    Over the objection of the School Districts, the State Board authorized the creation of Prairie Crossing in 1998, entitling it to enroll students residing within the boundaries of the School Districts. Pursuant to statute, a charter school, which is authorized over the objection of a local school district, is funded by withholding funds otherwise due to the local school district(s) within which the pupils attending the charter school reside and paying those funds directly to the charter school. *Id.* § 27A-9(f).

¶ 4    From the inception of Prairie Crossing in 1999 until the 2015-16 school year, the State Board included pupils attending Prairie Crossing within the pupil enrollment of either Woodland or Fremont, depending upon the pupils' residences, in calculating the sums to be deducted from the funds otherwise due the School Districts and paid to Prairie Crossing. However, in December 2014, Woodland and Fremont were notified by the State Board that, beginning with funding for the 2015-16 school year, pupils attending Prairie Crossing would no longer be included within the pupil enrollment of either Woodland or Fremont for purposes of calculating the funds to be diverted and paid to Prairie Crossing. The effect of the change would result in more funds being withheld from both Woodland and Fremont than would have been withheld and paid to Prairie Crossing under the funding formula employed in prior years. In addition, the State Board notified the School Districts that it had recalculated the amount that should have been withheld from their general state aid and paid to Prairie Crossing for fiscal years 2013 and 2014 using the revised funding formula. According to the State Board's recalculation, an additional $278,269 should have been withheld from Woodland and paid to Prairie Crossing and an additional $46,905 should have been withheld from Fremont and paid to Prairie Crossing. Although the retroactive application of the State Board's revised funding formula resulted in a determination that Prairie Crossing was underfunded by $325,174, the State Board and Prairie Crossing settled the underfunding for $200,000, of which $170,000

was attributed to Woodland and $30,000 was attributed to Fremont. The State Board advised Woodland and Fremont that it would be withholding the amount of the settlement attributable to each from their general state aid in equal installments over the next four years.

¶ 5        In May 2015, the School Districts filed the instant action against both the State Board and the Board of Directors of Prairie Crossing Charter School. In their amended complaint, the School Districts sought a judicial declaration that students residing within their respective boundaries and attending Prairie Crossing shall be counted as attending the school district in which they reside for purposes of calculating the sums to be deducted from the funds otherwise due to them from the State Board and paid to Prairie Crossing. They also sought a judicial declaration that the State Board lacked the statutory authority to recalculate the general state aid to which they were entitled for previous fiscal years and recoup any overpayment from the future general State aid to which they are otherwise entitled.

¶ 6        Following discovery, the School Districts and the State Board filed cross-motions for summary judgment. On October 7, 2016, the circuit court denied the State Board's motion for summary judgment and granted summary judgment in favor of the School Districts, declaring that pupils attending Prairie Crossing shall be counted as attending the school district in which they reside for purposes of calculating the sums to be deducted from the funds otherwise due the School Districts and paid to Prairie Crossing. In addition, the circuit court found that the State Board lacked the statutory authority to recoup from the School Districts any funds which it paid to Prairie Crossing as a result of its recalculation of the funds to which Prairie Crossing was entitled for prior fiscal years. Both the State Board and Prairie Crossing filed timely notices of appeal which this court consolidated for disposition.

¶ 7        "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). When, as in this case, parties file cross-motions for summary judgment, they agree that no genuine issues of material fact exist, and the resolution of the case is purely a question of law. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 432 (2010). We review the entry of summary judgment *de novo*. *A.B.A.T.E. of Illinois, Inc. v. Quinn*, 2011 IL 110611, ¶ 22.

¶ 8        This appeal concerns statutory interpretation. As such, we are presented with questions of law, which we resolve *de novo*. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008). Our primary objective is to give effect to the legislature's intent, which is best indicated by the plain and ordinary language of the statutes themselves. *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23. We give words their plain and obvious meaning unless the legislative act changes that meaning. *Svithiod Singing Club v. McKibbin*, 381 Ill. 194, 197 (1942). In determining legislative intent, we also consider the object to be attained by the act. *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25.

¶ 9        In giving meaning to the words and clauses of a statute, no part should be rendered superfluous. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 26. When the language of a statute is clear and unambiguous, we give effect to the plain and ordinary meaning of the language without resort to other tools of statutory construction (*Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 255 (2004)), as it is not our function to rewrite a statute or depart from its plain language by reading into the statute exceptions, limitations, or conditions not expressed therein (*People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73, 81 (2009)). "If further construction of a statute is necessary, a court may consider similar and related

enactments." *Hartney Fuel Oil Co.*, 2013 IL 115130, ¶ 25. Statutory provisions should be read in concert and harmonized. *People v. Rinehart*, 2012 IL 111719, ¶ 26.

¶ 10    The two statutes at issue in this appeal are the School Code and the Charter Schools Law. The specific question to be answered is whether pupils residing within the boundaries of a local school district but attending a charter school should be counted as pupils attending the local school district for purposes of calculating the sums to be deducted from the funds otherwise due the local school district and paid to the charter school.

¶ 11    Where, as in this case, a charter school is authorized by the State over the objection of the local school district(s), an amount equal to the funds to which a charter school is entitled is diverted by the State Board from funds otherwise due the local school district(s) and delivered to the charter school. 105 ILCS 5/27A-9(f) (West 2012). Funding of a charter school, such as Prairie Crossing, which is organized other than by referendum, is determined by agreement between the local school board and the charter school. However, in no event shall the funding be less than 75% or more than 125% of the local school district's per capita student tuition, multiplied by the number of students attending the charter school who reside in the local school district. *Id.* § 27A-11(b).

¶ 12    The Charter Schools Law does not define how a local school district's per capita student tuition is to be calculated. The arguments of the parties as contained in their respective briefs reflect their agreement that the phrase "per capita student tuition" as used in section 27A-11(b) of the Charter Schools Law is synonymous with per capita tuition cost (PCTC) as used in the School Code. *Id.* The State Board asserts in its brief, and the School Districts echo in their brief, that the formula set forth in section 18-3 of the School Code (*id.* § 18-3) is used to establish a local school district's PCTC. In relevant part, section 18-3 of the School Code provides that:

> "[T]otal annual per capita [tuition] cost [(PCTC)] shall be determined by totaling all expenses of the school district in the educational, operations and maintenance, bond and interest, transportation, Illinois municipal retirement, and rent funds for the school year preceding the filing of such tuition claims less expenditures not applicable to the regular K-12 program, less offsetting revenues from State sources except those from the common school fund, less offsetting revenues from federal sources except those from federal impaction aid, less student and community service revenues, plus a depreciation allowance; and dividing such total by the *average daily attendance* for the year." (Emphasis added.) *Id.*

The specific issue on which the parties are in disagreement is the calculation of a local school district's annual *average daily attendance* for purposes of establishing its PCTC.

¶ 13    In urging reversal, the State Board argues that, in calculating a local school district's average daily attendance, pupils residing within the district but attending a charter school should not be counted as attending the public schools maintained by the local school district. The State Board reasons that, because local school districts do not bear the cost of educating pupils attending a charter school, those pupils should not be counted in determining the local school district's annual average daily attendance, which is the denominator in the formula set forth in section 18-3 of the School Code used in calculating PCTC.

¶ 14    In support of its rationale in this regard, the State Board contends that section 18-3 of the School Code makes clear that the PCTC of a local school district "shall be determined by the State Superintendent of Education by multiplying the number of such children in average daily

attendance in such schools" by the "annual [PCTC] of administering the schools of the district." *Id.* The flaw in the State Board's reliance upon the above quoted language of section 18-3 is that it relates to the average daily attendance of certain specified categories of pupils attending public schools maintained by a school district, not the average daily attendance of the local school district itself. The "such children" referred to are those pupils who fall within the specified categories. For funding purposes, the number of "such children" in average daily attendance in public schools maintained by a school district is to be multiplied by 1.2 times the annual per capita cost of administering the schools of the district. *Id.* Section 18-3 does not contain any provision setting forth the manner in which average daily attendance for the local school district is to be determined. That formula is contained in section 18-8.05(C) of the School Code, which provides, in relevant part, that for purposes of calculating general State aid, average daily attendance is the "monthly average of the *actual number of pupils in attendance of each school district*, as further averaged for the best 3 months of pupil attendance." (Emphasis added.) *Id.* § 18-8.05(C)(1). Standing alone, the phrase *actual number of pupils in attendance of each school district* as contained in section 18-8.05(C)(1) could reasonably be interpreted to mean the actual number of pupils attending public schools maintained by a school district. However, section 27A-11(a) of the Charter Schools Law makes clear that, "[f]or purposes of the School Code, pupils enrolled in a charter school shall be included in the pupil enrollment of the school district within which the pupil resides." *Id.* § 27A-11(a). Based upon the clear and unambiguous language of section 27A-11(a) of the Charter Schools Law, we do not believe that pupils attending a charter school located within the local school district in which they reside can be excluded from a determination of the actual number of pupils in attendance in that district for purposes of calculating the district's average daily attendance. To conclude otherwise would render section 27A-11(a) superfluous.

¶ 15    Nevertheless, the State Board argues that pupils attending Prairie Crossing are not considered to be enrolled in the district within which they reside for purposes of determining the local school district's average daily attendance. It asserts that, although it originally authorized Prairie Crossing as a charter school, Prairie Crossing is now authorized by the Illinois State Charter School Commission (Commission), and as such, it is not part of a local school district but rather constitutes its own local education agency. See *id.* §27A-5(k). The State Board concludes, therefore, that pupils attending Prairie Crossing are not considered to be enrolled in the district within which they reside. However, as the School Districts point out, the fact that section 27A-5(k) now provides that a Commission-authorized charter school is its own local education agency does not explain how that fact impacts the manner in which a charter school is funded. In particular, the fact that a charter school is considered a local education agency is not taken into consideration in section 18-3 of the School Code, which contains the formula for determining a local school district's PCTC that is the basis for computing the funding to which a charter school is entitled. Further, although a Commission-authorized charter school may be considered a local education agency, there is no statutory authority for the proposition that its pupils do not reside within a local school district. Finally, as the School Districts argue, there is no statutory support, either express or implied, for the notion that a local school district's PCTC is to be determined differently for purposes of calculating funding for a charter school that is authorized by the State Board or the Commission as opposed to calculating funding for a charter school authorized by a local school district.

¶ 16    As a general rule, we accord deference to the interpretation of a statute by the agency charged with its administration. *Shields v. Judges' Retirement System of Illinois*, 204 Ill. 2d 488, 492 (2003). However, an agency's interpretation is not binding and will be rejected when it is erroneous. *Id.* Based upon the foregoing analysis, we believe that the State Board's interpretation of the School Code and the Charter Schools Law, as those statutes relate to the issue of whether pupils attending a charter school should be counted as attending the local school district in which they reside for purposes of calculating the local school district's average daily attendance, fails to comport with the clear and unambiguous language of section 27A-11(a) of the Charter Schools Law. We conclude, as did the circuit court, that pupils attending Prairie Crossing shall be counted as attending the school district in which they reside for purposes of calculating that local school district's average daily attendance, which is the denominator of the formula used to determine the district's PCTC set forth in section 18-3 of the School Code, which, in turn, establishes the minimum and maximum to be deducted from the funds otherwise due the School Districts and paid to Prairie Crossing.

¶ 17    Having determined that the pupils attending Prairie Crossing shall be counted as attending the local school district in which they reside for purposes of calculating that district's average daily attendance, as the State Board did in fiscal years 2013 and 2014, we need not address the issue of whether the State Board was authorized by statute to recalculate the general state aid to which the School Districts were entitled in those years as there was no overpayment based upon the original calculation of the funds to which Prairie Crossing was entitled.

¶ 18    For the reasons stated, we affirm the circuit court's order granting summary judgment in favor of the School Districts and denying the State Board's cross-motion for summary judgment.

¶ 19    Affirmed.